## THOMAS, Ex'x, v. GREAT WESTERN MINING CO.

No. 20135.   Opinion Filed July 7, 1931.

Coun's & Counts and W. H. Moore, for plaintiff in error.

J. H. Gordon and Monk & McSherry, for defendant in error.

HEFNER, J.   This action was filed in this court on February 6, 1929, by Uldine Nichols Thomas, as executrix of the estate of A. B. Thomas, deceased, against Great Western Mining Company, to recover for damages because of the alleged negligence of the mining company causing the death of A. B. Thomas.

The petition alleged that the deceased lost his life in a mine explosion; that the explosion occurred because of the alleged negligence of the owner and manager of the mine, and that defendant is chargeable with such negligence.

The defense was that deceased was not in the employ of defendant at the time of the accident.

A jury was impaneled to try the case, and at the close of the evidence the trial court, on motion of defendant, directed a verdict in its favor. In our opinion, the trial court ruled correctly in so doing. Deceased met

his death while engaged in surveying a mine owned, operated, and controlled by the Eastern Coal & Mining Company. Defendant was in no manner interested in the mine and had no control over it. The evidence discloses that deceased was a general employee of defendant and worked for it until about ten days prior to the accident, and was on its pay roll at that time. The explosion occurred on the 13th day of January, 1926. Deceased was first employed by defendant sometime in the latter part of the year 1924, and continued in its employ until he was engaged by the Eastern Coal & Mining Company. The evidence discloses that sometime in the latter part of December, 1925, the manager of the Eastern Coal & Mining Company solicited deceased to survey its mine and make maps thereof. He was at that time engaged in surveying defendant's mine, but agreed to make the survey as soon as he had completed the survey of defendant's mine. Deceased was at that time on the regular pay roll of defendant, and it was agreed between it and the coal company that it would lend it deceased's services to survey its mine and bill it for such services. In accordance with this agreement, deceased entered upon this work for the coal company and was engaged therein at the time of the explosion. Defendant paid him for his work from the time he left its employment until his death. It, however, had no control over him while working for the coal company, but he was at that time under the complete supervision and direction of the coal company. In these circumstances, notwithstanding he was at that time on the pay roll of defendant and by it lent to the coal company, it could not be held liable for the negligence of that company.

In 18 R. C. L. 493, the following rule is announced:

"It is well settled that one who is the general servant of another may be loaned or hired by his master to another for some special service so as to become, as to that service, the servant of such third person, the test being whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his master, or becomes subject to that of the person to whom he is loaned or hired."

At page 784, the author further says:

"In determining whether, in respect of a particular act, a loaned servant is the servant of his original master, or of the person to whom he has been furnished, the general test is whether the act is done in the business of which the person is in control as a proprietor, so that he can at any time stop or continue it and determine the way in which it shall be done, not merely in reference to the result to be reached, but in reference to the method of reaching the result."

In the case of Western Union Telegraph Co. v. Rust (Tex. Civ. App.) 120 S. W. 249, the court said:

"Where a servant has two masters, a general and a special one, the latter, if having the power of direction or control, is the one responsible for the servant's negligence."

In the case of Aderhold v. Bishop, 94 Okla. 203, 221 Pac. 752, this court announced the following rule:

"A third person to whom servants of a general master have been temporarily loaned, with their consent, is for the time being their master, he having for the time being control of the servant."

In discussing the case, the court further said:

"An examination of the authorities discloses to our satisfaction that the true test of the existence of the relation of master and servant in a given case does not depend upon whether the servant was in the general employ of the master, but upon whether the master actually exercises supervision and control over the servant during the time he uses such servant. A general master may loan the service of his employee to another for a specified purpose and for a short period of time, in which case the individual to whom such general servants are let is the master and responsible for their negligent acts so long as he exercises actual supervision over them."

See, also, the following authorities: Samuelian v. American Tool & M. Co. (Mass.) 46 N. E. 98; Wyman v. Berry (Me.) 20 Ann. Cas. 439; Sacker v. Waddell (Md.) 103 A. S. R. 374; Brown v. Smith (Ga.) 22 A. S. R. 456.

The fact that deceased remained on the pay roll of the defendant does not alter the case. In 18 R. C. L. page 784, it is said:

"Where * * * the master has hired his servant to another, giving the latter the complete and absolute control and direction of the servant * * * the original master is not liable for his negligence, although he receives pay for the work so done by him, as he is for the time being the servant of the hirer."

In Scribner's Case (Mass.) 120 N. E. 350, 3 A. L. R. 1178, a driver in the employ of an ice company was lent to a coal company. The employee was injured while in the employ of the coal company. His wages during the time he was working for the coal company were paid by the ice company. The court held the ice company not liable.

See, also, Westover v. Hoover (Neb.) 129

N. W. 285; Hardy v. Shedden Co., 78 Fed. 610; Coughlan v. Cambridge (Mass.) 44 N. E. 218; Arnett v. Hayes Wheel Co. (Mich.) 166 N. W. 957; Burns v. Jackson (Cal.) 211 Pac. 821.

Plaintiff contends that the judgment is contrary to the rule announced by this court in the case of New v. McMillan, Adm'x, 79 Okla. 70, 191 Pac. 160. It is there said:—

"Where it is agreed that the relation of master and servant had existed up to a given time, but an issue as to whether such relation ceased at such time and was transferred to a third person, a reasonable test in such case is whether or not the servant by mutual agreement terminated his employment, ceased to be under the control and orders of the former master, renounced obedience to such master, and knowingly and willingly subjected himself to the orders of another under a new agreement with a new master."

This case is not controlling because the evidence is undisputed that it was mutually agreed between all the parties that deceased's services were to be transferred to the Eastern Coal & Mining Company, and that he knowingly and willingly subjected himself to its orders. Under these circumstances, the defendant is not liable for the alleged injury.

Judgment is affirmed.

CLARK, V. C. J., and RILEY, CULLISON, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. LESTER, C. J., absent.