## SOUTHERN DRILLING CO. v. McKEE, Adm'x.

No. 22783.    March 5, 1935.

Rehearing Denied March 26, 1935.

Application for Leave to File Second Petition for Rehearing Denied April 9, 1935.

Williams & Williams, for plaintiff in error, Southern Drilling Company, and for defendant in error Henry J. Hughes.

Dolman, Dyer & Dolman, for defendant in error Mildred Valley McKee, administratrix.

PER CURIAM. This is an appeal from a judgment of the district court of Carter county. The plaintiff in error, Southern Drilling Company, will be referred to herein as defendant company. Mildred Valley McKee, administratrix, will be referred to herein as plaintiff. Henry J. Hughes will be referred to herein as defendant Hughes.

The suit was instituted for the benefit of the widow and minor son against both defendants for the wrongful death of the decedent, Joe McKee. The plaintiff alleged her appointment and qualification as administratrix, and the death of her decedent, and alleged that the said death occurred while her decedent was engaged as derrick man, using rotary tools in drilling an oil well for the defendant company.

She further alleged that the defendant Hughes was the driller and was in charge of the drilling equipment and had super-

vision over the other men working with him. After describing the operation of the rotary tools, the plaintiff charged the defendants with negligence, in that the defendant company failed to furnish safe appliances and equipment and a safe place within which the said Joe McKee did his work, and failed to provide a safe method of doing the work. She particularly alleges that the defendant company furnished a traveling block with projecting corners or edges not properly guarded; that the defendant Hughes was negligent in that he operated the tools at a dangerous rate of speed, requiring the said decedent, Joe McKee, to work with undue speed and haste, and that the defendant Hughes was further negligent in that he did not watch the decedent, McKee, and the traveling block, a part of the machinery, at all times to prevent injury, and was not watching them at the time the accident occurred. The defendant company filed an answer admitting its corporate existence, admitting that the decedent, McKee, was employed as a derrick man for it on the date alleged; that he suffered injuries on that date which caused his death. It denied all other material allegations of the petition and pleaded contributory negligence. The answer of the defendant Hughes was similar to the answer of the defendant company. The plaintiff replied to these answers in the form of general denials.

The cause came on for trial. Verdict was rendered in favor of the plaintiff and against the defendant company. Verdict was rendered in favor of the defendant Hughes and against the plaintiff. The plaintiff and the defendants each filed motion for new trial, directed to the adverse judgments against them. The motions for new trial were both overruled and denied. The action is properly here on petition in error and cross-petition in error, with case-made attached.

The defendant company asks reversal on 13 assignments of errors. It has briefed these assignments of errors under seven propositions.

The plaintiff asks reversal on cross-petition in error, supported by some argument, but not by any authorities. It is evident from the case-made that the defendant Hughes was named as a codefendant to prevent the removal of the case to federal court, since the defendant company is a foreign corporation.

In order to properly understand the errors assigned by the defendant company, it is necessary to make a somewhat detailed statement of the facts in the case. The accident to the decedent, Joe McKee, which resulted in his death shortly thereafter, occurred while he was engaged in drilling a well for oil in the Oklahoma City oil field. There were six men employed in drilling the well. The defendant Hughes was the driller, and was in charge, having authority to direct all of the other men, to employ men, or to discharge men. The well had been drilled to a depth of approximately 6,000 feet. The decedent, McKee, was performing the duties of what is referred to as "derrick man." At the time of the accident, the crew was engaged in running pipe into the hole. There was six-inch casing in the hole and four-inch pipe was being run therein. The pipe was stacked perpendicular against the portion of the rig referred to as the "finger board." Four joints of pipe were joined together, constituting a length of approximately 90 feet, and referred to as a "fourble" of pipe. The derrick man worked on what is referred to as the "fourble board," which is a platform approximately 40 inches wide, built across the derrick, and on one side thereof, approximately 85 feet above the floor of the derrick. The "finger board" is a board eight or ten feet in length at the same elevation as the "fourble board," and is at right angles thereto. At intervals of six inches there are small rods 18 inches in length at right angles to the finger board and parallel to the fourble board, being placed in that manner to prevent the fourbles of pipes which rest against it from sliding. The derrick man, in this case the decedent, McKee, is that member of the drilling crew who works on the fourble board, his duties being to have the fourbles of pipe in the proper position and to clamp the latches of the traveling block to the fourble of pipe as the traveling block reaches the elevation of the fourble board. The traveling block is a large instrument used to elevate the fourble of pipe and then let it be dropped in position over the mouth of the well. The other pipe, which had already been placed in the well, was held in position by means of clips. It was the duty of other members of the crew to screw the bottom of the fourble of pipe to the top of the pipe in the well, then remove the clips and by means of the operation of the machinery the pipe would descend the length of the fourble into the well, and clips be attached. Then the driller released the traveling block and elevated it and the elevators for the next fourble of pipe. It was the duty of the derrick man to have another fourble of pipe ready when the elevator block was again brought to the level of the fourble board.

The evidence in the case at bar shows that 60 fourbles of pipe had been lowered into the well, that there were 18 more in the finger board, and that they were at the greatest distance from the fourble board. The evidence further shows that at the rate the work was being performed about one minute was consumed with each fourble of pipe; that the duties of the derrick man required him to steady the fourble of pipe while it was being screwed to the pipe in the well; that he had approximately 15 seconds from the time when he was no longer required to steady this pipe until he walked to the finger board and brought another fourble of pipe in position to be clamped by the traveling block on its way up; that he could not let the pipe fall against the fourble board, but must steady it to keep it from being bent.

The evidence further shows that the traveling block was not of the latest model; that it had square corners; that it passed in a very few inches of the fourble board; that the derrick man was provided with a safety belt, with a rope attached to the belt and attached to a stationary bar on the other side of the fourble board; that he must pass over the fingers of the finger board to get the more distant fourbles of pipe; that if he walked around on the finger board itself, it would have been necessary for him to untie his safety rope. The evidence shows that when he fell to the elevator floor his safety belt was broken; the rope attached to his safety belt had been frazzled by coming in contact with the square edges of the traveling block. Frazzles of the rope were found on the corners of the traveling block and paint had been rubbed from the corners of the traveling block. No one saw McKee when he started to fall. He died almost instantly after he struck the elevator floor.

There was no evidence that there were defects in the traveling block, in the fourble board, in the finger board, or the fingers themselves. There was evidence introduced with reference to the sharp corners of the traveling block, and further evidence introduced that by the cutting off of these corners, or the use of another model traveling block, there would have been no sharp corners to cut the safety rope when it came in contact therewith.

The defendant company briefs the case in this court on seven propositions:

(1) That the doctrine of res ipsa loquitur does not apply.

(2) That, in a joint action against master and servant where the master is sought to be held liable for the act of the servant solely on the ground of respondeat superior, a verdict in favor of the servant is tantamount to a verdict in favor of the master.

(3) That a master has discretion concerning the kind of machinery he will use; that he may use new or old machinery, as he likes; that he is not compelled to provide the latest model of machinery; that proof of an accident in the use of a certain type of machinery does not tend to show negligence, unless it is coupled with substantial evidence of negligence, and not mere speculation.

(4) That an instruction to the effect that it is the duty of the defendant to furnish the plaintiff with a safe place to work, and safe tools with which to do work, and a safe method of work, is erroneous because it places a greater degree of duty upon the master than the law requires.

(5) That in order to sustain a recovery for injuries under the law requiring an employer to guard dangerous machinery, it must be shown that the machinery could be properly guarded without rendering it useless.

(6) That a verdict cannot rest on conjecture or speculation.

(7) That there must be shown causal connection between negligence and injury.

The case has been well briefed on both sides.

We are unable to agree with the defendant company's contention. We do agree with the abstract principles of law set forth in its various propositions. Under the law of this state, the doctrine of res ipsa loquitur does not apply. Under the law of this state, a verdict in favor of the servant is tantamount to an acquittal of the master sued jointly with him, when the master's liability is sought solely on the ground of respondeat superior. However, this doctrine does not apply in the case at bar for the reason that it is both charged and proved in this case that the master did not furnish a safe place for the decedent, Joe McKee, to work, nor a safe method with which to perform his work. These are nondelegable duties resting upon the master. Choctaw Electric Co. v. Clark, 28 Okla. 399, 114 P. 730; Prickett v. Sulzberger & Sons, 57 Okla. 567, 157 P. 356. It is true that the master has discretion concerning the kind of machinery he will use, and may use, either new

or old, but there is a further duty resting upon the master. He must select and use the type and kind of machinery, and conduct his work in such a method as not to throw an undue danger on his employees. The defendant company complains of the giving of certain instructions. Among other things, the court instructed the jury that if they found by a preponderance of the evidence that the decedent's death was brought about by negligence on the part of the company in failing to furnish safe tools, equipment, and appliances, or a safe place in which to work, or a safe method of doing the work, and that the deceased was not guilty of contributory negligence, then the plaintiff would be entitled to recover. The defendant company says that this instruction throws a great burden on the defendant, and is tantamount to making the defendant company an insurer; that all that was required of the company was to furnish reasonably safe tools, equipment, and appliances with which to work, and to exercise ordinary care and diligence in providing a reasonably safe place to work. The defendant company cites the cases of Dolese Brothers v. Smith, 42 Okla. 452, 141 P. 775, and C., R. I. & P. Ry. Co. v. Cheek, 105 Okla. 91, 231 P. 1078, in support of this contention. In these cases it is held:

"An instruction that, 'it was the duty of the defendant to furnish the plaintiff a safe place to work and safe tools to do the work with,' is erroneous because it lays upon the master a higher degree of duty than the law imposes."

The instruction of the court in the case at bar is materially different from the instruction referred to in the above quotation. Further, the court, in giving instruction No. 2 in the case at bar, told the jury that a master owes a duty to furnish the servant reasonably safe appliances and equipment with which to work, a reasonably safe place within which to work, and a reasonably safe method of performing the work to be done. The court could not give all of its instructions in one paragraph, but if the instructions, taken as a whole, properly state the law, there is no error.

The defendant company complains of the refusal of the court to give certain requested instructions. We have examined all the requested instructions, and have examined the instructions given by the court. The substance of all of the requested instructions which were proper to be given are given in the instructions of the court. Therefore, there was no error in refusing the instructions in the exact words offered.

The defendant company complains of the action of the trial court in admitting in evidence a photograph of a later model of a traveling block, which did not have sharp or square corners, but was a stream line; also complains of the action of the court in admitting evidence to the effect that in many cases the type of block used by the defendant company had been changed by sawing off the sharp corners. The defendant company argues in its proposition No. 5 that, in order to sustain a recovery for injuries under the law requiring an employer to guard dangerous machinery, it must be shown that the machinery could be properly guarded without rendering it useless. This evidence was competent to show that the traveling block could have been changed and the sharp edges removed therefrom, and thereby the danger of accident guarded against without rendering the traveling block useless.

The evidence hereinbefore summarized, to our mind, shows that the death of the decedent was caused by the rapid speed in which the work was being done, and by the failure to furnish a safe place and a safe method of doing the work; that on account of these facts the safety rope came in contact with the sharp edge of the traveling block and was frazzled and broken, thereby throwing the decedent from his elevation to the floor of the derrick and producing his death. Therefore, it was not necessary for the jury to resort to conjecture or speculation in arriving at its verdict.

The defendant company contends that any rapid speed in doing the work was caused from the following facts: That the driller had told the men that the pipe must be replaced in the hole before they would go to their breakfast; that they ordinarily had breakfast at approximately six o'clock; that the accident occurred about 7:20; therefore, that the speed with which the work was being done was purely a matter of detail and not under directions of the company; that it was purely for the convenience of the crew to work at a rapid rate so that they could go to their breakfast as early as possible. The defendant company placed the defendant Hughes on the stand as its own witness. He testified that under the rules of the company he could not leave the pipe out of the hole while the crew went to eat; that he was running the pipe in accordance with his instructions, before eating; therefore, the speed at which the men were working was not a matter of convenience on the part of the crew, but was governed by the rules of the company. The law with

reference thereto is governed by the opinion of this court in the case of St. L. & S. F. Ry. Co. v. Eakins, 141 Okla. 256, 284 P. 866.

The duty of providing a reasonably safe place to work, reasonably safe appliances for doing the work, and a reasonably safe method of doing the work, are nondelegable duties; a verdict in favor of the servant does not exonerate the master, when an injury results from negligence growing out of one or all of these nondelegable duties. C., R. I. & P. Ry. Co. v. Bennett, 36 Okla. 358, 128 P. 705; Choctaw Electric Co. v. Clark, 28 Okla. 399, 114 P. 730; Prickett v. Sulzberger & Sons, 57 Okla. 567, 157 P. 356; St. L. & S. F. Ry. Co. v. Eakins, 141 Okla. 256, 284 P. 866.

We find no error in the admission or rejection of evidence in the instructions of the court or the refusal to give instructions. The defendant company relied upon the defense of contributory negligence and assumption of risk. Under section 6, article 23 of the Oklahoma Constitution, these were questions of fact for the jury. There is evidence to support the verdict of the jury. Therefore, we find no error in that regard.

On the cross-petition of the plaintiff against the defendant Hughes, there is some argument, not very plausible, but even if it were plausible, it is not supported by any citation of authority. Therefore, it affords the plaintiff no relief.

Finding no error, the judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys Wm. S. Hamilton, J. C. Cornett, and D. E. Johnson in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Hamilton and approved by Mr. Cornett and Mr. Johnson, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, PHELPS, and CORN, JJ., concur.