ATCHISON, T. & S. F. R. CO. et al.
v. KENNARD.

No. 31565. March 26, 1946.

Rehearing Denied June 11, 1947.

Second Petition for Rehearing Denied
June 17, 1947.

*181 P. 2d 234.*

I. J. Underwood, Paul Pinson, and M. C. Rodolf, all of Tulsa, for plaintiff in error Atchison, Topeka & Santa Fe Railway Company.

George F. Short, Welcome D. Pierson, George E. Fisher, and John F. Reed, all of Oklahoma City, for plaintiff in error E. M. Campbell & Company.

Speakman & Speakman and Fred L. Patrick, all of Sapulpa, for defendant in error.

OSBORN, J. This action was commenced on March 23, 1942, by the plaintiff, Osie Kennard, on behalf of herself and her four minor children, against the defendant, Atchison, Topeka & Santa Fe Railway Company, a corporation, E. M. Campbell & Company, a copartnership composed of E. M. Campbell and J. D. Amsey, and Oklahoma Natural Gas Company, a corporation, to recover damages for the death of her husband, Herbert Kennard. The trial court sustained a motion of the Oklahoma Natural Gas Company to quash the service of summons upon it, and it went out of the case for default of further service. Herein Osie Kennard will be referred to as plaintiff, the defendant Atchison, Topeka & Santa Fe Railway

2

Company as the railroad company, and E. M. Campbell & Company as the construction company. The trial court overruled the demurrers of the railroad company and the construction company to the plaintiff's amended petition, overruled their demurrers to the plaintiff's evidence, denied their motions for instructed verdict at the close of all the evidence, and submitted the case to the jury, which returned a verdict in favor of the plaintiff. The railroad company and the construction company appeal.

The essential facts established by the evidence are undisputed. From the evidence it appears that on the 15th day of August, 1940. the construction company was engaged in the construction of a pipe line conduit or tunnel for the Oklahoma Natural Gas Company under the tracks of the railroad company some four or five miles north of the city of Edmond, Okla.; that the deceased, Herbert Kennard, was in charge of the crew engaged in this operation, having full and complete supervision of the digging of said tunnel and full and complete control of the men under him, including the right to hire and fire men for such purpose; that the crew consisted of six men in addition to Kennard; that the tunnel was some 26 inches in diameter and was dug by the use of "sharpshooters," one person working from each side of the railroad track, the six men working three on each side, one man on each side working the "sharpshooter" and one man at the mouth of the tunnel throwing the dirt out into a ditch, the "sharpshooters" being so guided that the holes dug from each side were to meet and thus form a complete tunnel. The evidence further established that at about 5:00 o'clock in the afternoon a Santa Fe passenger train coming from the north and running some 40 or 50 miles per hour approached the place where the tunnel was being dug, the tunnel at that time being almost completed. The track at this point was practically level and was straight for some 500 feet due north of the site of the tunnel. North of this 500 feet of

straightaway track the railroad proceeded in a slight curve through a cut around the base of a small hill. It further appeared that Kennard anticipated that in the construction of the tunnel, trains passing over it loosen the earth and cause the tunnel to cave, thus endangering the men who were in the tunnel, and that he had a man outside of the tunnel on the east side of the track to warn those in the east part of the tunnel of the approach of trains in order that they might leave the tunnel and escape any danger from such caving. When the train above mentioned came into view, a man at the entrance of the tunnel on the west side of the railroad called out that a train was approaching. Kennard at that time was just inside of the mouth of the west part of the tunnel attempting to ascertain whether the hole was being so dug that it would meet the one coming from the east side. Upon being notified of the approach of the train he came out of the tunnel, ran back about 35 feet to the end of the ditch outside of the tunnel, and then ran up to the railroad shouting at the men on the east side of the track, apparently to warn them of the approach of the train. He reached the railroad track very shortly before the train arrived, and stepped one foot over the rail nearest him, looking across at the mouth of the tunnel on the other side and apparently shouting at the men there. He then stepped back off the track and stood there until the engine reached him, but standing so close to the track that the cylinder head on the side of the engine nearest him struck him and killed him almost instantly. The witnesses differ as to the length of time he stood beside the track before being struck by the train, but from their testimony it appears that he had sufficient time to step farther back to a place of safety. All the witnesses testified that he did not look at the train as it approached, but continued to look across the track. The engineer of the train testified that when he first saw Kennard go upon the track it was absolutely impossible for

him to slow the train or do anything to avoid striking Kennard, and his testimony is uncontradicted. As to the danger to the men in the tunnel from caving occasioned by the passage of trains, the witness Dewees testified that the soil was sandy and liable to cave and that one time when a train passed a little of the earth was shaken off. Several witnesses who were standing on the right of way testified that when Kennard started up on the tracks they shouted at him to come back, but he paid no attention.

A witness named Friend, who was working inside the east tunnel at the time the train approached, testified that on this particular occasion the man outside the tunnel did not warn him of the approach of the train, but that he heard the rumble and felt the vibration and immediately scrambled out of the tunnel, emerging therefrom just as the last coach crossed it. It does not appear that Kennard knew that no warning had been given the men in the east part of the tunnel.

Both the railroad company and the construction company assign as error the overruling of their respective motions for an instructed verdict. Since, after careful consideration, we are of the opinion that the trial court erred in overruling these motions, it is unnecessary to consider the other assignments of error.

As to the liability of the construction company, the facts establish that Kennard in the digging of this tunnel was a superior servant or vice principal of the construction company, under the rule announced in City of Edmond v. Washam, 190 Okla. 140, 121 P. 2d 300. While it appears that J. D. Amsey was the general superintendent of the construction company, the evidence shows that he exercised no authority over Kennard in the digging of this tunnel except to show Kennard where the tunnel was to be dug; that Kennard alone chose the method of doing the work; was the sole judge of the number of men to be employed and their

qualifications; and that he was under no supervision, direction, or control by the construction company during the operation. He was shown to be an experienced man in the construction of these tunnels and the work was done by him in his own way and with employees of his own choosing. If the place where the work was to be done was unsafe, it was his duty to see that it was made safe. He did not advise the construction company that any additional help was needed in the construction of the tunnel, or that any precautions for the safety of his men, other than those taken by him, should be taken. There is no showing that he requested that the railroad company be required to slow its trains, to station a flagman at any point, to have the section foreman present, or to do anything else in connection with the operation. From the evidence these were all matters which were left to his judgment.

Plaintiff contends that City of Edmond v. Washam, supra, does not apply for the reason that Kennard did not have full and complete charge of the entire business of the construction company, but was subject to a superior, and that he was only a foreman in charge of this particular piece of work. Under the facts established in this case this argument is without force. In the conducting of this operation Kennard was just as much in full and complete charge of the construction company's business as was Washam in the cited case. No one gave him instructions or orders, and in the doing of that work he had no superior. He undertook to do it without calling upon the company for any additional precautions for the safety of the employees and assumed full responsibility to his employer for the completion of the operation without injury to himself or to them. The mere fact that he had a general superintendent over him does not place him outside the rule announced in the Washam Case, as in that case Washam also had a superior, the city manager, who left the conducting of the opera-

tion in which Washam was engaged entirely to him.

The motion of the construction company for a directed verdict should have been sustained.

As to the railroad company, plaintiff in her amended petition and here contends that the railroad company was negligent in that it knew that Kennard and his crew were engaged in the digging of said tunnel and that the ground was of a nature which would crumble and cave as a result of the fast movement of a train over the track at that point, and that the railroad company should have slowed its trains and given reasonable warning of the approach thereof so that those engaged in the digging of such tunnel might escape before a train passed over said tunnel. In their brief counsel for plaintiff urge that the workmen inside the tunnel were placed in a position of imminent peril by the speed of the train; that the undisputed evidence shows that it was the custom and practice to slow down the trains where such tunnels were being constructed, and that Kennard was attempting to rescue the workman Friend from imminent danger at the time he was killed.

While it appears from the record that the railroad company was notified by the Oklahoma Natural Gas Company that this tunnel would be dug under its tracks on that date, there is no evidence tending to show that either the gas company or the construction company requested it to slow its trains because of such operation, nor is there any evidence tending to show that the slowing of its trains was reasonably necessary to protect the lives of those engaged in the tunneling operation. The only danger pointed out by counsel for plaintiff which might possibly result from the operation of the railroad company's trains at full speed at the point where the tunnel was being constructed was that such operation might result in caving, thereby endangering the lives of those within the tunnel. The evidence shows that the possibility of such caving was anticipated by Kennard, who was in charge of the operation. He did not request that the trains be slowed down at that point, but instructed his outside men to warn the men inside the tunnel when trains were approaching so that they might come out and thus avoid any danger from caving. This precaution was apparently all that he considered necessary.

Assuming, as contended by the plaintiff, that Kennard was an invitee of the railroad company, the railroad company owed to him the duty to exercise ordinary care for his protection. St. Louis-San Francisco Ry. Co. v. Williams, 176 Okla. 465, 56 P. 2d 815; C. R. Anthony Co. v. Williams, 185 Okla. 564, 94 P. 2d 836.

Ordinary care is that degree of care which ordinarily prudent persons engaged in the same kind of business usually exercise under similar circumstances, and the failure to exercise such ordinary care would be negligence. Wright v. Clark, 177 Okla. 628, 61 P. 2d 192. But if we assume for the sake of argument that the railroad company was negligent in the operation of its train on this particular occasion, that, standing alone, is not sufficient to enable the plaintiff to recover damages for Kennard's death. It must be further shown that such negligence was the proximate cause of Kennard's death. City of Okmulgee v. Hemphill, 183 Okla. 450, 83 P. 2d 189; Mathers v. Younger, 177 Okla. 294, 58 P. 2d 857. And for an act to be deemed the proximate cause of an injury it must be shown that a person of ordinary intelligence would have foreseen that the injury was liable to be produced by the act. Mathers v. Younger, supra; Oklahoma Gas & Elec. Co. v. Wilson, 172 Okla. 540, 45 P. 2d 750; Patrick v. Oklahoma City et al., 170 Okla. 545, 41 P. 2d 103.

From the statement of the evidence above, we think it conclusively appears that the speed of the train was not the proximate cause of Kennard's death. His death was caused by his own act.

The peril in which he placed himself by going upon the railroad tracks immediately in front of the rapidly approaching train was clearly apparent. No one could reasonably anticipate that he would pursue such a course to his own injury.

In Mathers v. Younger, supra, the driver of an automobile neglected to release his emergency break before starting his car, and after he had driven a short distance the car began to fill with smoke, and both the driver and the plaintiff in that action, who was an employee of the driver, believed that the car had caught fire. The driver attempted to stop the car and then noticed that his brake was on and released it. In the meantime the plaintiff, alarmed by the possibility of the car burning, opened the door and attempted to leave the car while it was moving. The slight lurch of the car when the driver released the emergency brake caused plaintiff to fall from the car and be injured. In holding that the driver was not liable the court said:

"Measured by these authorities, would the mere fact that George R. Beyers, deceased, neglected to release his emergency brake before he started his car, in the natural and continuous sequence, not broken by any independent cause, produce the injury complained of by the plaintiff? We are at a loss to see how he could have anticipated any such result by the remotest anticipation upon his part."

So, in the instant case, it is inconceivable that the railroad company could anticipate that the running of its train at normal high speed at the point where the tunnel crossed its tracks could cause Kennard to leave his place of safety and rush in front of the train in order to warn someone at the other side of the track of the train's approach.

To avoid the force of the rule announced by the cases above cited, counsel for plaintiff contend that Kennard was injured while attempting to rescue his man Friend from imminent danger, and that the so-called "rescue theory" as stated in 45 C. J., p. 841, applies. They urge that Friend was in danger of being buried by a cave-in which might be caused by the approaching train; that it was Kennard's duty to warn him of the approach of the train so that he could escape this imminent peril, and that Kennard was killed while attempting to perform that duty.

To apply the rescue theory to the instant case, we must hold that the railroad company, in operating its train across the site of the tunnel at what the evidence establishes to have been its ordinary speed, was guilty of negligence, and that in the exercise of reasonable care it should have known that by doing so it was endangering the lives of the employees of the construction company in the tunnel.

It was the duty of the construction company to furnish its employees a reasonably safe place to work. Southern Drilling Co. v. McKee, 171 Okla. 409, 42 P. 2d 265; Wright v. Clark, supra. In order to charge the railroad company with negligence in operating its train at the usual and ordinary rate of speed across the tunnel, we must hold that in the exercise of due care it knew or should have known that the construction company had failed to perform this duty; that the lives of the men in the tunnel were endangered by such operation of its train, and that the construction company had failed to take reasonable precautions to avoid such injury. Under the facts and circumstances set forth in this opinion, we hold that such knowledge could not be imputed to the railroad company.

In order to justify a finding of negligence there must be shown a breach of duty on the part of the railroad company, which it should have foreseen would probably produce injury. O'Neil v. Vie 94 Okla. 68, 220 P. 853. In the absence of any evidence of any fact or circumstance which would lead a reasonably prudent person to believe that

6

the construction company had neglected its duty to its employees, and, specifically, in the absence of any evidence of any request made by Kennard, the vice principal of the construction company in charge of the work, that the trains be slowed when they approached the tunnel, or that warning signals or other devices be installed, such knowledge may not be imputed to the railroad company, 45 C. J. 653, § 27.

In the instant case the evidence clearly warrants the conclusion that Kennard had taken all precautions which he considered necessary to insure the safety of his workmen while engaged in constructing the tunnel under the railroad company's tracks. While the contract between Oklahoma Natural Gas Company and the railroad company provided that the tunnel should be constructed under the railroad company's supervision, and the letter written by the railroad company to the Oklahoma Natural Gas Company requested that its section foreman be notified so that he might be present when the tunnel was constructed, and provided that the work on the right of way was to be under his supervision, the record shows that the foreman was notified, but that neither he nor any other employee or official of the railroad company was present or exercised any supervision over the work. Kennard at no time gave the railroad company any information which might lead it to believe that the running of trains at their usual speed would endanger his workmen, nor did he request that the trains be slowed, or that the railroad company in any way depart from the usual method of conducting its business. By his own negligence in failing to establish necessary warning and safeguards for the men under his charge, and by his own unanticipated act in placing himself in a position of danger, he was injured. We think the "rescue theory" has no application herein.

Reversed.

GIBSON, C.J., HURST, V.C.J., and BAYLESS, WELCH, DAVISON, and ARNOLD, J.J., concur.