## BISON TRANSPORTS, Inc., v. FRALEY.

No. 34069. May 22, 1951.

Rehearing Denied July 3, 1951.

Application for Leave to File Second Petition for Rehearing Denied Dec. 26, 1951.

*238 P. 2d 835.*

Pierce, Rucker, Mock, Tabor & Duncan, Tulsa, for plaintiff in error.

Lewis C. Johnson, Tulsa, for defendant in error.

DAVISON, J. This is an action, brought by Maxine Fraley, administratrix of the estate of Clyde Ray Fraley, deceased, as plaintiff, to recover for and on behalf of herself, as widow, and Marilyn Kay Fraley, a minor daughter, for the wrongful death of said decedent allegedly resulting from the failure of his employer, Bison Transports, Inc., the defendant herein, to provide safe and adequate air brakes and emergency brakes on the tractor trailer he was employed to drive, and failure to keep the same in a safe condition. The parties will be referred to as they appeared in the trial court.

The defendant was engaged in the business of transporting gasoline by motor truck and plaintiff's decedent was employed as driver of a large tractor trailer. He had been so employed for about two years. Including that period, he had had about four and a half years' experience driving gasoline transport trucks with air brakes and an additional six years' experience driving other trucks. Previous to that time, he had worked some two years as an automobile mechanic. In his employment with the defendant, he was hauling gasoline from a refinery in West Tulsa to Westville, Oklahoma, making four or five trips a week over a route going through Tahlequah, Oklahoma. On the morning of February 19, 1948, at 6:10 o'clock, he left the refinery with his transport loaded with approximately 40,000 pounds of gasoline. He was driving a tractor trailer composed of a 1948 General Motors

truck purchased in October, 1947, and a Trailmobile semi-trailer purchased in March, 1946. Both units were equipped with Westinghouse air brakes and, in addition, the tractor or truck was equipped with a standard G.M.C. emergency brake.

His route through Tulsa went through five street intersections protected by traffic stop lights and two stop signs. There was also a stop sign on the highway in the town of Wagoner, Oklahoma. After leaving Tulsa, he drove 74 miles to the town of Tahlequah and over one detour near Grand river. The highway over which he was traveling entered Tahlequah from the west over a steep hill. Just east of the crest of the hill, the highway levels off and crosses an old railroad bed in somewhat of a dip. It then drops sharply to the east some five blocks and crosses the main street of Tahlequah, on each side of which is a traffic stop light. About two blocks east of the main street, the highway turns abruptly north or to the left. Two witnesses were driving up the hill west of town when they saw decedent come over the crest of the hill traveling 35 to 40 miles per hour in their estimation. At about the place that the old railroad crosses the highway, the truck "jackknifed," which is a folding at the joint between tractor and trailer. This is usually caused by braking of the speed of the tractor or truck section only, which allows the trailer section to exert a forward pressure against the rear of the tractor and thus push the rear wheels of the tractor out of the line of travel. Two other witnesses were near the crest of the hill—one the operator of a butane business, the other one backing a truck up in front of that business. They placed the speed of decedent's transport at between 60 and 70 miles per hour before it jackknifed.

Fraley drove his vehicle at this speed between the truck that was backing up and another car that was parked across the street. A short distance east of that, he drove between two other parked cars and had to turn sharply in each direction as he went through the narrow opening. Immediately thereafter, he was crossing the old railroad crossing when the rear wheels of the trailer bounced some 1 ½ to 3 feet off the ground and the jackknifing occurred. All who saw it testified that the feat of driving between the two sets of cars at such high speed was a demonstration of exceptional skill. After the transport jackknifed, it straightened out and continued down the hill into town at an increasing rate of speed. The horn started blowing and fire was seen under the rear of the tractor unit. All wheels were turning—none of them being locked by the brakes or otherwise. He crossed main street at a speed of approximately 70 miles per hour with horn blowing. One witness saw the door of the cab open. Deceased failed to negotiate the turn two blocks east of main street; the trailer turned over; the tractor was wrecked; the gasoline caught fire and the entire transport was destroyed and plaintiff's decedent was killed. This occurred at 8:20 o'clock, just two hours and ten minutes after decedent left the refinery at West Tulsa.

The owners and managers of the defendant testified that Fraley was given the responsibility of seeing that the transport was kept clean, lubricated and in good repair. That he was instructed to inspect the truck and have it greased every 1,000 miles, or every week, whichever was the shortest time. That he was authorized to and did use the services of the garage and repair department of the agency from whom the tractor was purchased, the agency from whom the trailor was purchased, also a special brake service company. Their testimony further was to the effect that at any time trouble was experienced while out of town, decedent had authority to take the transport to any garage for servicing and repair. Two months prior to the accident, the brake service company replaced several parts, did some little repair and put the brakes in good condition. After

522

the fire, the air hose for the brakes were burned up, the emergency brake lever was down or on, and the gear shift lever was such that the truck was in gear.

Upon a trial of the cause to a jury, a verdict for $15,000 was returned in favor of plaintiff. From the judgment based thereon, this appeal has been perfected. Among others, defendant relies, for reversal, upon the proposition that the evidence is insufficient and that the trial court should have sustained the demurrer to the evidence and directed a verdict in its favor.

The record contains no direct evidence of the condition of the brakes on the transport either immediately before or after the wreck or that faulty brakes caused the accident. Over the objection and exception of the defendant, the report of the highway patrolman was introduced in evidence. In it the statement was made that "it was apparent that the veh. did not have any brakes." The admission of the same was clearly prejudicial error. Hadley v. Ross, 195 Okla. 89, 154 P. 2d 939. It is certain that the brakes were not being effectively used. Whether that was because the decedent was intentionally not applying them or because they could not be applied due to something mechanical, will never be known. In any event, the statement of the patrolman in his report is a conclusion based entirely upon hearsay.

Many of the rules of law, applicable to situations of the kind here involved, are collected and quoted in the case of City of Tulsa v. Harman, 148 Okla. 117, 299 P. 462. Therein it is said:

"In the case of Smith et al. v. Clark, 125 Okla. 18, 256 P. 36, this court announced the rule that: 'A demurrer to plaintiff's evidence in a personal injury action ought to be sustained, unless it is reasonably apparent that the injury suffered by the plaintiff is the causal effect from some wrongful act of the defendant, in violation of a legal duty owing to the plaintiff.'

"This court has repeatedly held:

"'The mere fact that an injury occurs carries with it no presumption of negligence. It is an affirmative fact for the injured party to establish that the defendant has been guilty of negligence.' Jenkins v. Davis, 111 Okla. 191, 239 P. 135; New v. Bradshaw, 89 Okla. 205, 214 P. 557; Chicago, R. I. & P. Ry. Co. v. Tate, 57 Okla. 215, 156 P. 1182; St. Louis & S. F. Ry. Co. v. Fick, 47 Okla. 530, 149 P. 1126.

"'To entitle the plaintiff to recover damages in an action for negligence, he has the burden of proving by a preponderance of the evidence negligence of defendants, and that the negligence alleged and proven was the proximate cause of his injury.' Lusk v. White, 58 Okla. 773, 161 P. 541; Armstrong v. City of Tulsa, 102 Okla. 49, 226 P. 560; Oklahoma Paper Co. v. Reid, 102 Okla. 220, 228 P. 978; Atchison, T. & S. F. Ry. Co. v. St. L. & S. F. Ry. Co., 41 Okla. 80, 135 P. 353, 48 L.R.A. (N.S.) 509; Chicago, R. I. & P. Ry. Co. v. Duran, 38 Okla. 719, 134 P. 876.

"'Where plaintiff seeks to recover for damages suffered by reason of defendant's negligence, and the acts of negligence are specifically set forth in the petition, the burden of proving the negligence as alleged is upon the plaintiff.' Gulf, C. & S. F. R. Co. v. Harpole, 111 Okla. 301, 239 P. 609, 610.

"'Where the evidence fails entirely to show primary negligence on part of defendant, demurrer to plaintiff's evidence should be sustained.' Lancaster v. St. Louis & S. F. Ry. Co., 128 Okla. 176, 261 P. 960; Shuck v. Davis, 110 Okla. 196, 237 P. 95; Chicago, R. I. & P. Ry. Co. v. Wainscott, 103 Okla. 187, 229 P. 808; Lakey v. North McAlester Coal Co., 98 Okla. 130, 224 P. 309; Turner v. Durant Cotton Oil Co., 96 Okla. 31, 219 P. 892.

"In the case of Chicago, R. I. & P. Ry. Co. v. Barton, 59 Okla. 109, 159 P. 250, this court said: 'Negligence cannot be based upon the failure of those in charge of a train to ring the bell and sound the whistle, where plaintiff pleads and proves that, while in a position of safety, he knew the train was approaching.'

"In Missouri, K. & T. Ry. Co. v. Gilbreath, 49 Okla. 681, 154 P. 539, 540,

this court said: 'It seems to us in such circumstances that negligence cannot be based upon the failure of the engineer to ring the bell or sound the whistle to warn the trackmen of the approach of his train when it was obvious to him that they had knowledge of this fact.'

"In the case of Midland Valley Railroad Co. v. Graney, 77 Okla. 54, 185 P. 1088, 1089, this court said: 'The provision of the Constitution (section 6, art. 23) under which the defense of contributory negligence shall be submitted to the jury, does not apply to the primary negligence because of which a recovery is sought; and, where there is no evidence reasonably tending to show that a defendant is guilty of negligence, it is error for the trial court to submit the issue to the jury.'

"In District of Columbia v. Moulton, 182 U. S. 576, 21 S. Ct. 840, 45 L. Ed. 1237, that court said: 'The question of negligence or no negligence is one of law for the court, where but one inference can reasonably be drawn from the evidence.'"

Following then to specific application of these general rules of law, the following statement is to be found in the case of Jamison v. Reda Pump Co., 190 Okla. 593, 126 P. 2d 71:

"We now take up a consideration of the case against Denver (employer of plaintiff's decedent). The basis for recovery here is negligence because of failure to furnish a safe place to work or to furnish safe tools and appliances.

"The only evidence to rely on here is the proof of a broken or chipped hole in the porcelain cover of this disconnector. Otherwise, there could not have been a contact between the disconnector and the wire. It was not shown nor is it contended that contact could have occurred except for the break.

"The only eyewitness who professed to have seen the disconnector before and after the accident stated that he saw the disconnector about five hours earlier and did not see the broken place, but he did see it was broken after the accident.

"We think the duty that rested on Denver to inspect its tools and appliances and to repair the same should be exercised within reasonable bounds and the alleged breach of this duty should likewise be judged reasonably. The record made by the plaintiff shows that no one but Tompkins (plaintiff's decedent) had enough contact with this switch box to learn of any changes in its condition that would render it dangerous and the evidence of the plaintiff is that this broken condition probably did not exist for a longer period than five hours before the accident.

" . . . The evidence was that he was the only person who used the switch box. If he had notice of the break in the disconnector, the record does not show that he reported it to Denver or undertook to repair it. Denver relied on him in this respect, and if he did not know that the disconnector was broken, Denver did not know it was broken. If he had notice or knowledge that it was broken and did not notify Denver, then Denver had no notice or knowledge of the fact and consequently was not negligent in the sense that it breached the duty it owed Tompkins. Earl v. Oklahoma, etc., R. Co., 187 Okla. 100, 101 P. 2d 249, and cases cited therein."

To the same effect is the case of City of Edmond v. Washam, 190 Okla. 140, 121 P. 2d 300.

A careful search of the record herein fails to disclose any proof that the brakes on the transport were defective. In the Jamison case, supra, the electrical switch box was found to be defective after plaintiff's decedent was electrocuted.

"The burden is upon the plaintiff, in an action to recover damages for an injury caused by alleged negligence, to show the existence of the negligence and that the negligence was the proximate cause of the injury. . . . Neither conjecture nor speculation may form a basis for a judgment." Atchison, T. & S. F. Ry. Co. v. Phillips, 158 Okla. 141, 12 P. 2d 908.

In the instant case no conclusion can be reached other than that the brakes were in good condition when Fraley

524

drove through Tulsa, where it was necessary for him to stop a number of times at intersections and also out on the highway where he negotiated a detour around the Grand River bridge. The first indication that the brakes were either not used or were not effective was at the point where the old railroad right of way crossed the highway in Tahlequah. Paralleling the reasoning in the Jamison case, supra, the only source of information for defendant to know the condition of the truck was the deceased himself. Discarding, then, all testimony that decedent had authority to have repairs made in Tulsa or elsewhere, all testimony that decedent had the responsibility of seeing that the equipment was in a safe condition, assuming that the brakes were defective and were the cause of decedent's death, even then there was no knowledge thereof which defendant had, or should, with all vigilance, have had. The entire testimony fails to show that the defendant did some act which should not have been done or failed to do some act which should have been performed proximately resulting in Fraley's death.

"Where, in an action for damages for death, the evidence clearly shows that the death of plaintiff's decedent was not due to any negligence on the part of the defendant, the defendant's motion for a directed verdict should be sustained." Atchison, T. & S. F. Ry. Co. et al. v. Kennard, 199 Okla. 1, 181 P. 2d 234.

The judgment is reversed and the cause remanded, with directions to enter judgment for defendant.

ARNOLD, C. J., LUTTRELL, V. C. J., and GIBSON, HALLEY, and O'NEAL, JJ., concur. CORN, J., dissents.