**KING'S VAN & STORAGE COMPANY, Incorporated, a Corporation, Plaintiff in Error,**

v.

**Tom CRINER, Defendant in Error.**

No. 36690.

Supreme Court of Oklahoma.

July 20, 1956.

Rehearing Denied Oct. 9, 1956.

**1016**

Rucker, Tabor & Cox, Thomas L. Palmer, Tulsa, for plaintiff in error.

Jimmie Whitely, H. Gene Seigel, Frank Robert Hickman, Tulsa, for defendant in error.

PER CURIAM.

The defendant, King's Van & Storage Company, Incorporated, a Corporation, plaintiff in error, will be referred to as King's. The defendants, Mr. and Mrs. Simpson, d/b/a White's Transfer Company, will be referred to as White's. The defendant in error will be referred to as plaintiff.

The plaintiff was employed by the defendant White's to drive a truck. White's was a partnership engaged in the moving business in Tulsa, but it was not authorized to transfer goods in interstate commerce. Defendant King's was in the same business

in Oklahoma City, but was a larger concern and was authorized to haul in interstate by the Interstate Commerce Commission. On occasions, as in this instance, King's would lease equipment from White's, including the driver, to handle jobs when it was more convenient or their own equipment was unavailable. The lease agreement here involved was executed in writing on September 4, 1951, and provided that White's would furnish the specified truck and trailer and a driver to transport household goods from Oklahoma City to designated points in Kentucky and Tennessee. White's were to maintain the equipment and pay the driver, but it was particularly provided that:

"2. During the period of this lease the said vehicle and driver shall be solely and exclusively under the direction and control of the lessee, who shall be liable to the shipper.

"3. Upon expiration of this lease, possession of this vehicle will promptly be restored to the lessor."

The leased trailer had King's name printed thereon. The driver was to obey King's instructions and was to receive payment from the shipper for the transportation on behalf of King's.

Just prior to the trip that resulted in the accident causing plaintiff's injury, plaintiff, as driver, had been on a similar trip for King's and White's to Houston, Texas, using the same vehicle. While returning from Houston to Oklahoma City, plaintiff discovered that the brakes were not functioning properly. He was able to control the truck, but when he reported to King's at Oklahoma City, he told them about the defective brakes and suggested that they should be checked. After his truck was loaded with furniture and he was given the bill of lading and the lease contract, this trip being for King's plaintiff was told to proceed to Tulsa and have White's see to the repairs. He was also shown the route to take in making the trip from Oklahoma City to the delivery points. The brakes continued to manifest the same malfunction of the trip from Oklahoma City to Tulsa.

Plaintiff reported the defective brakes to White's at Tulsa and was instructed to take the vehicle to the defendant McCarty's garage. Around noon the plaintiff delivered the truck and trailer to the garage where Mrs. Simpson had already called and left instructions. Plaintiff offered to describe the condition of the brakes but was informed by the mechanic that he had already been told what to do.

McCarty testified that he repaired a leak in the hand valve and checked for other leaks in the brake system. He also testified that he drove the truck around the block using the brakes, but he did not otherwise check the brakes nor examine the internal mechanism of the brake system. The truck was to be ready for plaintiff by 5:00 P.M. The truck was a 1948 model and there had never been any overhaul of the brake system nor was there any periodic check made of the brakes. When plaintiff returned and received the truck from McCarty's, he went to White's where a discussion of the route directed by King's was held and plaintiff was told to "go ahead and go the way they told me." This route was known by drivers to be a bad road. Plaintiff left Tulsa and drove to Springdale, Arkansas, where he stopped for the night. The brakes were apparently functioning properly and continued to do so until just prior to the accident. Early the next morning, he continued the journey and proceeded to the top of Bush Mountain, approximately two miles west of the White River, which was some eight miles from Eureka Springs, Arkansas. There he stopped and checked his tires, built up pressure in the air brakes, checked them to be sure they were working, and started over this two miles of curving hilly down-grade. This portion of the highway was described by highway warning signs as "dangerous". Plaintiff was operating the vehicle over this part of the road in second gear, low range, for its additional braking effect. Part way down, plaintiff discovered the brakes:

"* * * seemed to act up, kind of * * * like they did down in Texas,

and I started looking for a place to pull the truck off the road and there wasn't no road there to get the truck on, or pull it off on, so I thought I would pull it up to the top of this hill and stop the truck, and I got to the top of the hill and I couldn't stop it, it just went right on over the hill. * * * I went down the hill. I tried to swing wide so that I could turn the truck into that bridge and go across the bridge but instead it throwed me into an embankment there of solid rock."

This, and other testimony of the plaintiff relating the total failure of the brakes, was the only direct testimony as to the cause of the accident. It was corroborated by the absence of skid-marks on the road. There was testimony by other drivers of this vehicle that in July there had been trouble with one of the hose connections of the air-system permitting a loss of air from the brakes and that this trouble had recurred after being repaired by the drivers. White's knew of this difficulty. There was also testimony that the air hose connecting the tractor with the trailer was examined at the scene of the accident and found to be "worn out down to the thread" and not, in the opinion of the witness, as a result of the wreck. The defendant, McCarty, testified that he did not make an inch by inch examination of the hose, and that such a worn hose as was exhibited in the courtroom should be replaced. This portion of the hose, about which the testimony was given, was introduced in evidence but the entire hose connecting the air system of the tractor with that of the trailer was not produced in court. This particular portion of the hose was shown to be broken. Placed under operating pressure in a demonstration to the jury it showed marked weakness at the worn spot. A brake expert testified that a sudden loss of air from the service line connecting the two units or a slow leak anywhere in the system would not set the emergency system of the trailer. He also testified that a total failure of the brakes could only have been caused by a complete loss of air pressure, loss of hydraulic fluid, or a mechanical failure of the foundation system of the brakes. The brake shoes, that part of the system which creates the friction with the wheels of the vehicle, were proved to be adequate had the other portion of the system functioned.

The jury returned a verdict in favor of the plaintiff upon which judgment was rendered. Upon appeal, King's does not argue that the verdict was excessive nor many of the other assignments of error presented in the motion for a new trial and the petition in error. The argument presented is based on the proposition that there was no duty owed the plaintiff by this defendant and that, if such a duty did exist, there was no evidence of negligence to sustain the verdict. Having failed to argue and cite authorities in support of the other assignments of error contained in the petition of error, all such alleged errors not argued and sustained by persuasive authority are waived. Harley v. Jobe, 207 Okl. 296, 249 P.2d 468.

Apparently all concede that the plaintiff was the general servant of White's, and that as to third parties, King's would most likely have been liable for any negligent conduct of the plaintiff in the operation of the vehicle if for no other reason than that they were having the transportation done under their Interstate Commerce Commission permit, White's not being qualified. No one has asserted that any law other than that of this forum should be applied.

We must determine the status of the plaintiff to King's. If he was a loaned servant as to this trip, the statute imposing liability on an employer to provide safe appliances for the use by the employee would apply; and the defendant, King's would be liable for negligence in failing to provide a reasonably safe vehicle. 40 O.S. 1951 § 178. However, King's insist that their co-defendant, White's, was an independent contractor, that King's owed no duty to the servant of such contractor, that the plaintiff never became their servant, but that if he did, he was a superior servant, and therefore responsible for the safe condition of the vehicle. The trial court in-

structed the jury on the legal theories presented by defendants, including contributory negligence, assumption of risk, unavoidable accident, and whether or not the plaintiff was King's servant or the servant of an independent contractor. Before proceeding further, it is well to point out that the judgment as to the defendant, White's, has become final. White's have not appealed and the correlative rights and duties of White's and King's to each other are not an issue in this appeal.

■■ Certainly one in the general service of one person may be lent or transferred to the special service of a third person for a particular purpose. It sometimes happens that one may wish a certain work to be done for his benefit and has neither persons in his employment who can do the work nor the necessary equipment to perform the task. He may then enter into an agreement with some other person to furnish him this necessary equipment and the persons to operate it while under his control. If that lessor place these employees under the lessee's exclusive control in the performance of the work, they become for that purpose the servant of him to whom they have been furnished. Under such circumstances, the special employer bears, not only the liability to third persons for injuries caused by the servant's negligence, but also the liability to the servant for injuries suffered by him from any negligence in the performance of the duties owed him by his master. This is so because the work is his work and the employees for that purpose are his workmen. To determine whether a given case is that of master and servant, or some other relationship, we inquire, whose is the work being performed? This question can usually be answered by ascertaining who has the power to control and direct the servants in the performance of the work. Thomas v. Great Western Mining Co., 150 Okl. 212, 1 P.2d 165; Sheppard v. Hall, Okl., 282 P.2d 212. This rule applies when the general employer furnishes not only the servant, but the appliances with which he works, if both are subject to the control of the special employer in the performance of their duties. Linstead v. Chesapeake & Ohio Ry. Co., 276 U.S. 28, 48 S.Ct. 241, 72 L.Ed. 453. The right to discharge the servant and the duty to pay his wage are merely indications of control and are not exclusively determinative. Wylie-Stewart Machinery Co. v. Thomas, 192 Okl. 505, 137 P.2d 556.

■ Of course, the circumstances of each case will ultimately determine the relationship when measured by the foregoing standard. Here, from our examination of the record, there was testimony that this trip originated at King's Warehouse in Oklahoma City; that the load was theirs; that payment was to be made to them for this transportation; that the trailer had their name painted on it; that the driver was to obey their instructions; that the shipment was in interstate commerce; that White's was not authorized to ship in interstate commerce; that King's directed the route to be taken; that the lease provided that the equipment and the driver would be "solely and exclusively under the direction and control of King's". The jury was instructed that to be liable to plaintiff, King's must stand in the relationship of master to him and that it was not liable to the servant of an independent contractor. There was sufficient evidence to justify the court in submitting this issue to the jury and it, in turn, finding that the plaintiff was the servant of King's and under King's control as to this particular trip. We find no error in this regard.

■ If we were to assume that the plaintiff would qualify as a superior servant, or vice principal, it is apparent that this exception to the general rule of liability to a servant for the negligent failure to provide safe appliances has no application here. In this case, King's were notified by the plaintiff that the brakes were defective. City of Altus v. Martin, Okl., 268 P.2d 228.

■ It has been suggested that inasmuch as the jury returned a verdict in favor of the mechanic employed to check the brakes, the verdict against the master cannot be allowed to stand. This is not so. The lia-

bility of King's and White's to the plaintiff was predicated upon the duty imposed by statute to provide their servant with reasonably safe machinery and not upon the doctrine of respondeat superior. This statutory duty is non-delegable and a verdict in favor of the servant does not exonerate the master when the injury results from the master's negligence in failing to fulfill this non-delegable duty. Southern Drilling Co. v. McKee, 171 Okl. 409, 42 P.2d 265.

We now proceed to determine whether or not the court should have permitted the issue of the defendant's primary negligence to be submitted to the jury, bearing in mind that we must view the evidence and all reasonable inferences therefrom most strongly in favor of the plaintiff.

█ The allegation of negligence is based upon the furnishing to the plaintiff of this vehicle containing a defective braking system and the failure of the defendant to make a reasonable inspection and repair of the brakes after notice of the defect. The rules of law by which the defendant's duty is to be measured require the master to furnish the servant a reasonably safe place in which to work, and this includes reasonably safe machines with which to perform the work as well as reasonably adequate inspections and repair to keep the machines in a safe condition. This is a positive duty requiring action. In this regard, the master must take the precautions of an ordinarily prudent man in keeping the machines reasonably safe. Having thus acted, he has fulfilled his duty to the servant and is released from liability from dangerous conditions of which he has no knowledge, or of which he could not acquire knowledge in the exercise of ordinary diligence. Here, the jury was justified in finding that this accident resulted from a defect in the braking mechanism of the vehicle. They could also have concluded that the defendants had knowledge that the system was defective prior to the accident and that this knowledge was sufficient notice to provide them a reasonable opportunity to correct the defect or hold the truck from service pending a reasonable inspection and repair.

The fact that there had not been a total failure of braking ability prior to this occasion is of little importance because the notice of the defective condition, unexplained, was ample warning that the brakes might fail to function altogether. After being notified, the defendants had the brake system checked for leaks of air. They did not make any thorough inspection of the other parts of the system. They also failed, as the event demonstrated, to have the necessary repairs made that would prevent the recurrence of the difficulty reported to them by the plaintiff. It was not unreasonable to conclude, on the basis of this testimony, that the defendants did not use reasonable care in ascertaining the cause of the trouble and in making necessary repairs, taking into consideration the age of the equipment, the lack of any former overhaul and periodic inspection, and the nature of the route to be followed with the load being transported. A more or less perfunctory check of the system for air leaks, this being a large interstate moving van, is hardly a thorough inspection of the brakes and is certainly not a repair of some defect unconnected with an air leak in the hand valve or loose fittings of the air hose. This is especially so where the defect reported re-manifests itself such a short time after its supposed repair.

It was established that such a total failure of the brakes to function would only occur as the result of some serious fault in the foundation system of the brakes or of a total loss of air from the system. The inference seems altogether reasonable that such a defect could have been discovered and remedied by making a reasonable inspection of the entire brake system.

█ It is not necessary to establish negligence and proximate cause by direct and positive evidence. They may arise from the circumstances and the reasonable inferences to be deduced from the facts proved. Buxton v. Hicks, 191 Okl. 573, 131 P.2d 1015; Casualty Reciprocal Exchange v. Sutfin, 196 Okl. 567, 166 P.2d 434; Chap-Tan Drilling Co. v. Myers, 203 Okl. 642, 225 P.2d 373. In Bison Transports v. Fra-

ley, 205 Okl. 520, 238 P.2d 835; and Sanders v. McMichael, 200 Okl. 501, 197 P.2d 280, cited by King's on this point, the facts are readily distinguishable. In neither case cited was there any testimony that the brakes of the vehicles were defective and failed to work and that the employer knew of this defect.

██ In the face of all the evidence it cannot be said, as a matter of law, that the defendants either exercised reasonable care to furnish plaintiff with a reasonably safe vehicle with which to perform this work, or that they exercised the care of a reasonably prudent man in making such inspections as were necessary to maintain it in a reasonably safe condition or that this negligence was not the proximate cause of the plaintiff's injury. Therefore, the matter was properly submitted to the jury. Service Pipe Line Co. v. Donahue, Okl., 283 P.2d 844; Thomas v. Inland Motor Freight, 190 Wash. 428, 68 P.2d 603; Myers v. Little Church by the Side of the Road, 37 Wash. 2d 897, 227 P.2d 165.

The judgment is affirmed.

On motion of defendant in error, included in his brief, judgment is here rendered in his favor against the sureties on the supersedeas bond on file herein, for the sum of $44,750 with interest from May 3, 1954, at six percent per annum and costs, such judgment on the supersedeas bond to be entered and enforced by the trial court, and as if there rendered.

JOHNSON, C. J., and WELCH, CORN, DAVISON, BLACKBIRD and HUNT, JJ., concur.

HALLEY and JACKSON, JJ., dissent.

The Court acknowledges the aid of the Supreme Court Commissioners in the preparation of this opinion. After a tentative opinion was written by Commissioner Nease, and approved by Commissioners Crawford and Reed, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.