2001 OK CIV APP 53

Michael **HARRINGTON** and Shirley Harrington, husband and wife, Appellants,

v.

**CERTIFIED SYSTEMS, INC.**, an Oklahoma corporation; the Select Group, Inc., an Oklahoma corporation; Mackellar Oil Company, an Oklahoma corporation; and Mackellar Services, Inc., an Oklahoma corporation, Appellees.

No. 94,040.

Court of Civil Appeals of Oklahoma, Division No. 4.

Aug. 1, 2000.

Margo M. Brown, Holloway, Dobson, Bachman & Jennings, Oklahoma City, for Appellants.

Matthew J. Graves, Oldfield & Coker, Oklahoma City, for Appellees Certified & Select.

C. William Threlkeld, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for Appellees MacKellar.

REIF, J.

¶ 1 Injured worker Michael Harrington and his co-plaintiff wife appeal the summary judgment that denied recovery on their tort and statutory claims against four defendants

who had an employment relationship with Mr. Harrington. Two of the defendants were related corporate entities that were in the business of supplying temporary employees. The parties stipulated that Mr. Harrington was an employee of these employment agency defendants at the time of his injury. The other two defendants were related corporate entities that were in the business of developing oil and gas interests. It was undisputed that the employment agency defendants had hired out Mr. Harrington to work on an oil rig operated by one of the oil developing defendants at the time of his injury.

¶ 2 Mr. Harrington was injured when the floor of the drilling rig slid out of place and struck him in the head. Mr. Harrington has noted evidentiary materials that show the supervisory personnel of the defendant who operated the rig (1) knew that the rig floor did not fit properly; (2) were aware the floor could slide out unless secured; (3) made a conscious decision not to secure the floor by means that were readily available; and (4) directed Mr. Harrington to work near the rig without the protection of a hard hat, after denying his request to retrieve his hard hat from a nearby storage room. At the rig, Mr. Harrington worked under the direction and control of the supervisory personnel of the defendant that operated the rig. Despite allowing the defendant that operated the rig to direct and control Mr. Harrington, the employment agency defendants agreed to, and did in fact, provide workers' compensation coverage for Mr. Harrington. It was conceded that the workers' compensation carrier for the employment agency defendants paid Mr. Harrington benefits for the injury at issue.

¶ 3 The employment agency defendants successfully argued to the trial court that the Workers' Compensation Act provided Mr. Harrington with his exclusive remedy and provided them immunity from liability "at common law or otherwise." The oil developing defendants likewise successfully argued that they also had this immunity because Mr. Harrington was a "loaned servant" for whom they shared workers' compensation liability with the employment agency defendants.

¶ 4 Both in the trial court and here on appeal, Mr. Harrington has contended that none of the employing entities can claim immunity under the Workers' Compensation Act. Mr. Harrington has argued that workers' compensation immunity does not apply, because workers' compensation was not his exclusive remedy. He has maintained that (1) his injury falls within the statutory remedy provided employees injured by defects in an employer's machinery under 40 O.S.1991 § 178, and (2) his injury was the direct result of intentional acts on the part of the defendant that operated the rig. Mr. Harrington has further contended that the employment agency defendants had a non-delegable duty to provide him a safe place to work and, therefore, any intentional acts or violations of 40 O.S.1991 § 178 can be imputed to the employment agency defendants. Mr. Harrington has maintained that the circumstances of this case, at least, present issues of fact concerning liability for injury by reason of a known defect in machinery under 40 O.S.1991 § 178, or intentional injury. Upon review, we disagree with Mr. Harrington's propositions and affirm.

I.

¶ 5 Mr. Harrington has relied on *King's Van & Storage Co. v. Criner*, 1956 OK 236, 301 P.2d 1015, to support his right to sue both the employment agency defendants and the oil developing defendants under 40 O.S. 1991 § 178. Mr. Harrington has maintained that § 178 gives employees a right to sue their employers that is distinct from and unaffected by the exclusive remedy of workers' compensation. Mr. Harrington has based this contention on the rule that the repeal of statutes by implication is not favored. He has stressed that § 178 was enacted prior to the first Workers' Compensation Act and that the legislature has never expressly repealed § 178.

¶ 6 The employment agency defendants and the oil developing defendants have noted that the Oklahoma Court of Civil Appeals recently considered the effect of the Workers' Compensation Act on § 178 in *Ragsdale v. Wheelabrator Clean Water Systems*, 1998 OK CIV APP 58, ¶ 3, 959 P.2d 20, 22. They

have stressed that *Ragsdale* held "the Workers' Compensation Act prohibits injured employees from proceeding in tort against his/her employer in district court." They assert that this prohibition included suits under § 178. In response, Mr. Harrington has contended that *Ragsdale* is not controlling.

¶ 7 We note that the *Ragsdale* opinion expressly found that § 178 was not applicable to that case. We further note that the court also stated that it did not decide if § 178 constitutes an exception to the rule giving exclusive jurisdiction to the Workers' Compensation Court of job-related injuries. Accordingly, we must agree with Mr. Harrington that *Ragsdale* is not controlling.

¶ 8 The *Ragsdale* case does correctly allude to the exclusive operation of the Workers' Compensation Act as set forth in 85 O.S.1991 § 12. This statute provides, in pertinent part, that "[t]he liability prescribed [by the Act] shall be *exclusive* and *in the place of all other liability* of the employer and any of his employees ... *at common law* or otherwise." (Emphasis added.)

¶ 9 As a general rule, "[u]nless the statute otherwise provides ... as between the employer and the employee, the rights and remedies provided by the [workers'] compensation acts are exclusive, within the area of their operation [and] the remedy provided by the act is exclusive of *all other statutory or common-law remedies,* and of any other liability on the part of the employer." 101 C.J.S. *Workmen's Compensation* § 918 at 354–57 (1958) (emphasis added) (footnotes omitted). This general rule further states that "an employee whose claim is within the act cannot maintain an action at law, or at common law, in tort against his employer for damages." *Id.* at 359 (footnote omitted).

¶ 10 Another widely recognized statement of this general rule provides that "workers' compensation remedies are *exclusive of all other remedies* for injuries within the coverage of the act suffered by employees against an employer." 82 Am.Jur.2d *Workers' Compensation* § 62 (1992) (emphasis added) (footnote omitted). This statement of the general rule also observes, "a legal action cannot be maintained for personal injuries compensable under a workers' compensation act." 82 Am.Jur.2d *Workers' Compensation* § 64 (1992) (footnote omitted).

¶ 11 One of the chief exceptions to the exclusive liability of workers' compensation for a work-related disability is when the disability is excluded from workers' compensation coverage. 82 Am.Jur.2d *Workers' Compensation* § 65 (1992). An example of this exception is found in *Dixon v. Gaso Pump & Burner Mfg. Co.,* 1937 OK 656, 80 P.2d 678. This case held that an employee could sue his employer at common law *and under § 178* for carbon monoxide poisoning that the employee sustained in his employment as a mechanic. The court reached this conclusion because carbon monoxide poisoning was an occupational disease that was not covered by the workers' compensation law in effect at the time.

¶ 12 If the legislature had included the occupational disease of carbon monoxide poisoning within the Act, there is little doubt, however, that the court's conclusion in *Dixon* would have been different, even though the disability in that case was due to circumstances arguably within § 178. The *Dixon* court, 80 P.2d at 681, expressed its approval of the general rule: "Where the right to an award of compensation [for] injury or death exists by virtue of the provisions of the Workmen's Compensation Act, the remedy for its enforcement is by many of the statutes made exclusive, and no action at law may be instituted against the employer."

¶ 13 Similarly, up until 1951, the accidental death of an employee, even an employee killed while engaged in a covered hazardous employment, was not within the scope of workers' compensation. An example of an employee who was killed while engaged in a covered hazardous employment (a derrick hand) and whose personal representative was permitted to sue under § 178 as a basis to recover for the employee's death is found in *Connelly v. Jennings,* 1952 OK 61, 252 P.2d 133. In 1951, however, the legislature brought accidental deaths within the coverage of workers' compensation under Session Laws 1951, ch. 2, p. 267, approved May 29, 1951.

¶ 14   Another exception to the exclusive remedy of workers' compensation is where the employment is not covered by the Act. 82 Am.Jur.2d *Workers' Compensation* § 65 (1992). An example of this under Oklahoma law is found in *Myers v. Luttrell,* 1961 OK 248, 373 P.2d 22. This case concerned a judgment in favor of a farm laborer (not covered by the Workers' Compensation Act in effect at the time of his injury) in the laborer's suit against his employer under § 178. The supreme court reversed the judgment because § 178 requires a showing of negligence on the part of the employer and the farm laborer had not shown negligence on the part of his employer for the defect in the tractor that allegedly injured him. Another example of a non-covered employee successfully suing his employer under § 178 is *King's Van & Storage Co.,* 1956 OK 236, 301 P.2d 1015, relied on by Mr. Harrington.

¶ 15   Under the current Workers' Compensation Act, only employees engaged in the employments that 85 O.S.1991 § 2.1 excludes from coverage would come within this exception to the exclusive effect of workers' compensation. Mr. Harrington does not come within the excluded employments of § 2.1.

■   ¶ 16   The cases that have recognized that an employee can sue an employer under § 178 where the Workers' Compensation Act has not provided coverage clearly do not support recognition of suit under § 178 as a general exception to the exclusive remedy of workers' compensation. In addition, the supreme court has rejected the contention that the legislature intended for § 178 to be a general exception to the exclusive liability of the Workers' Compensation Act.

¶ 17   *Roberts v. Barclay,* 1962 OK 38, ¶ 1, 369 P.2d 808, 809, involved a suit by an employee against a subcontractor and general contractor "for damages resulting from a fall from a scaffold, which occurred in the course of plaintiff's employment." The trial court sustained demurrers by the subcontractor and general contractor (both of whom had liability under the Workers' Compensation Act) ruling "that the subject matter of this action was within the exclusive purview of the Workmen's Compensation Law of Oklahoma." *Id.* at ¶ 2, 369 P.2d at 809.

¶ 18   In affirming the trial court, the supreme court observed: "The petition also sets out at length the provisions of 40 O.S. 1951 § 174, and refers to 40 O.S.1951 §§ 177 *and 178.* These sections are known as the 'Oklahoma Scaffold Act.'" *Id.* at ¶ 8, 369 P.2d at 810 (emphasis added). These statutes were all enacted together in 1908 in H.B. 269. Session Laws 1907–1908, ch. 53, pp. 519–21, approved May 2, 1908. Neither the title of H.B. 269 nor any companion statutes officially designate these statutes as the Oklahoma Scaffold Act but the supreme court recognizes them as such *including § 178.*

¶ 19   In *Roberts,* one of the plaintiff's arguments in challenging the trial court's ruling was that "the Oklahoma Workmen's Compensation Law and the Oklahoma Scaffold Act (40 O.S.1951 § 174 et seq.), when construed together, give plaintiff here a common law cause of action." *Id.* at ¶ 14, 369 P.2d at 810. The supreme court noted that "[p]laintiff argues to the general effect that the Workmen's Compensation Law, enacted in 1915, did not amend the Scaffold Act or restrict the cause of action concerned [therein] in any way." *Id.* at ¶ 16, 369 P.2d at 810. The supreme court answered this contention by stating, "We cannot agree." *Id.* at ¶ 17, 369 P.2d at 810.

¶ 20   In rejecting the plaintiff's argument, the Oklahoma Supreme Court looked to case authority from Illinois because "[t]he Illinois Scaffold Act is substantially the same as ours." *Id.* The Oklahoma Supreme Court cited approvingly a decision by the Illinois Supreme Court that held: "To the extent that it prohibits an action by an employee against an employer, the Workmen's Compensation Act has amended the Scaffold Act." *Id.* at ¶ 20, 369 P.2d at 811.

¶ 21   In *Roberts,* the Oklahoma Supreme Court affirmed the trial court's ruling "that the subject matter of this action was within the exclusive purview of the Workmen's Compensation Law." *Id.* at ¶ 2, 369 P.2d at 809. The supreme court explained its affirmance by noting:

   The petition herein shows on its face that plaintiff's damages resulted from an

accidental personal injury which arose out of, and in the course of, his employment with defendant Barclay. In such case, his exclusive remedy is in proceedings under the Workmen's Compensation Law of this state, 85 O.S.1951 § 1 et seq. It necessarily follows as a matter of law that he has no common law damage action [including suit under § 178] against defendants here.

*Id.* at ¶ 21, 369 P.2d at 811. Based on the foregoing, we hold that the trial court properly granted summary judgment in favor of all defendants to the extent that either Mr. Harrington or his co-plaintiff wife were seeking recovery on the basis of 40 O.S.1991 § 178.

## II.

¶ 22 The *Roberts* case also dealt with an allegation that workers' compensation was not the exclusive remedy for "an injury wilfully inflicted by employer upon employee." *Id.* at ¶ 5, 369 P.2d at 809. In *Roberts*, the supreme court "conceded that an employee who has been *wilfully* injured by his employer has a common law action for damages." *Id.* at ¶ 4, 369 P.2d at 809 (emphasis added) (citing *Adams v. Iten Biscuit Co.*, [1917 OK 47], 162 P. 938). However, the court rejected the plaintiff's effort to remove his claim from workers' compensation because "[t]he statement of facts ... does not support the proposition that plaintiff was wilfully injured by his employer." *Id.* at ¶ 11, 369 P.2d at 810. In *Roberts*, the plaintiff was injured because the scaffolding on which he worked fell because it was not properly secured.

¶ 23 In the case of *Thompson v. Madison Machinery Co.*, 1984 OK CIV APP 24, ¶ 17, 684 P.2d 565, 568, citing *Roberts* and *Adams*, the court of civil appeals held:

This court, like those before us, determines that the workers' compensation statutes were designed to provide the exclusive remedy for accidental injuries sustained during the course and scope of a worker's employment [and] were not designed to shield employers or co-employees from willful, intentional or even violent conduct.

In *Thompson*, the plaintiff was struck in the face with a wrench by a co-employee who was also part owner of the defendant corporate entity that employed them. Significantly, the court of civil appeals sustained a summary judgment in favor of the corporate employer because the co-employee "was acting on his own behalf and outside the scope of his responsibility as an employer and co-owner [of the business]." *Id.* at ¶ 23, 684 P.2d at 570.

¶ 24 In a later case where various female employees alleged that their supervisors sexually battered and harassed them, the court of civil appeals rejected the employer's defense that workers' compensation was the exclusive remedy for such conduct. *Pursell v. Pizza Inn, Inc.*, 1990 OK CIV APP 4, ¶ 3, 786 P.2d 716, 717 (citations omitted). Relying on *Thompson* and the cases cited therein, the court stated:

While it is true that 85 O.S. § 11 and § 12 provide for an exclusive Worker's Compensation remedy to employees who sustain accidental on-the-job injuries, we find that the [employees'] allegations of intentional and/or willful injury at the hands of Supervisors, agents of Company, take the [employee's] claims outside of the exclusive remedy provision of § 12.

¶ 25 In each of the foregoing cases, the court decided whether the conduct of the defendant employer involved a willful or intentional injury without specifying how the court defined willful or intentional injury. We do not believe that an employer should face the loss of legislatively-provided immunity from a civil suit by an injured employee without knowing in advance what constitutes willful or intentional injury. In view of the fact that the willful or intentional injury exception to exclusive liability and immunity under workers' compensation resulted from judicial interpretation of the Workers' Compensation Act, this court may and should complete the process of interpretation by supplying a definition of willful or intentional injury.

¶ 26 In providing a definition of willful or intentional injury, we start with the factual circumstances of the foregoing cases. In *Roberts*, the employee was injured because

equipment (scaffolding) was not properly installed in a situation that involved a high degree of risk and danger, and which called for the utmost care on the part of the employer. The failure of the employer to properly install the equipment under such circumstances was gross negligence, and yet the supreme court held that this was not willful injury of an employee by an employer.

¶ 27 In *Thompson* and *Pursell*, supervisors committed battery upon the plaintiff employees at work and this was found sufficient in each case to cause the loss of statutory immunity provided to the supervisors as co-employees. We are cognizant that *Thompson* and *Pursell* reached different conclusions on the issue of whether the battery by the supervisors would be imputed to the corporate employers. We believe that the difference in the court's conclusions in this regard resulted from the fact that these two employers had different degrees of legal duty to protect the employees from the intentional torts inflicted by the supervisors. Despite their differences, *Thompson* and *Pursell* both recognize that *an intentional tort* such as battery is a willful or intentional injury that will cause an employer's loss of immunity, if the intentional tort of a supervisor can be imputed to the employer.

¶ 28 A willful or intentional injury of an employee by an employer results in the loss of legal protection that the legislature has generally provided to the employment relationship. We believe that judicial interpretation of willful conduct in the context of the loss of other legislative protection of an employment relationship should be considered in defining a willful or intentional injury. The supreme court has held that before a teacher can be deprived of the employment protection of tenure for willful neglect of duty, that the teacher's conduct must have been "knowingly and purposeful." *Childers v. Independent Sch. Dist. No. 1*, 1981 OK 123, ¶ 19, 645 P.2d 992, 996. Defining a willful or intentional injury to involve knowing and purposeful conduct on the part of the employer to injure the employee is consistent with the specific holdings in *Roberts, Thompson*, and *Pursell*.

¶ 29 Many states have express statutory exceptions from the exclusive liability and immunity provided employers under their respective workers' compensation acts for willful, intentional or deliberate conduct by an employer to injure an employee. David B. Harrison, Annotation, *What Conduct Is Willful, Intentional, or Deliberate Within Workmen's Compensation Act Provision Authorizing Tort Action For Such Conduct,* 96 A.L.R.3d 1064 (1980). In reviewing this annotation, we find that the clear weight of authority favors the rule of "deliberate intention" to cause an employee's injury. This rule of deliberate intention involves "the formation by the employer of a specific intention to cause an injury ... (combined with some action aimed at accomplishing such result), as opposed to mere employer negligence or even gross negligence." *Id.* at 1068.

¶ 30 We find that the statement of this rule by the appellate courts in Oregon and Washington closely parallels what the appellate courts in this state have found to be willful or intentional injury. The Oregon and Washington cases cited in the annotation define "deliberate intention" to produce injury to mean the employer must have specifically determined to injure an employee and used some means appropriate to that end; mere carelessness or negligence, however gross, does not establish such intent.

¶ 31 In addition, many states like Michigan, have an "intentional tort" exception to workers' compensation. The Michigan court of appeals has held that "mere knowledge and appreciation of the risk involved in an act is not the same as the intent to cause injury." *Boyer v. Louisville Ladder Co.*, 157 Mich.App. 716, 403 N.W.2d 210, 211 (1987) (citation omitted). In this Michigan case, the employer failed to provide a safety cable to a worker on scaffolding which fell. The court held that this serious and dangerous omission did not reflect an intent to cause injury, notwithstanding knowledge that injury was substantially certain to follow if the scaffolding fell.

¶ 32 Finally, we are persuaded by a case reported in this annotation that is closely analogous to the facts of the instant case—

*Dunleavy v. Yates Constr. Co.,* 114 N.C.App. 196, 442 S.E.2d 53 (1994). In *Dunleavy,* the appellate court upheld a summary judgment in favor of the employer on the employee's intentional tort claim, even though the employer failed to shore-up or brace an excavation that required such measures and allowed the employee to work without a hard hat. The court found the defendant-employer's disregard of safety rules to be negligent, but not rising to the level of intentionally doing something that was substantially certain to result in the accident.

¶ 33 In the instant case, this court recognizes that it was negligent and, perhaps, grossly negligent (1) for employer to use a rig floor that did not fit, (2) for employer not to secure the floor from sliding out of place, and (3) for employer to direct Mr. Harrington to work around the unsecured floor without the hard hat he had requested. However, these acts did not constitute willful or intentional injury because (1) they were no more "willful" than the employer's failure to properly secure the scaffolding in *Roberts;* (2) they did not constitute a traditional intentional tort as recognized in *Thompson* and *Pursell;* (3) they did not involve conduct of a knowingly and purposeful character to injure Mr. Harrington; and, (4) they involved no deliberate intent, specific intent, or conscious determination to injure Mr. Harrington. Significantly, they did not even rise to the level of the most liberal test of intentionally doing something that was substantially certain to result in the injury-causing accident.

¶ 34 "[T]he test for deciding whether an employee may pursue a tort action or is confined to a workers' compensation action is whether the act complained of is normally within an employer-employee relationship." 82 Am.Jur.2d *Workers' Compensation* § 64 (1992)(footnote omitted). One of the earliest Oklahoma cases to consider the application of the Workers' Compensation Act to the exclusion of a tort remedy adopted a similar test. In syllabus 2 of *Invader Oil & Refining Co. v. Ridenhour,* 1925 OK 577, 239 P. 910, the supreme court said: "The test of liability under the Workmen's Compensation Act, for injuries arising out of and in the course of employment, is not the master's dereliction, whether his own or that of his representa-

tives, acting within the scope of their authority, but is the relation of the service to the injury, of the employment to the risk." *See also Thompson,* 1984 OK CIV APP 24, 684 P.2d 565. The summary judgment record actually presented *fails* to support a tort claim by Mr. Harrington against any of the defendants who had an employment relationship with him, because his injury resulted from (1) acts normally within the employer-employee relationship and (2) employment risks directly related to his service.

¶ 35 Based on the foregoing, we hold the trial court properly granted summary judgment in favor of all the defendants to the extent that either Mr. Harrington or his wife were seeking recovery on the basis of willful or intentional injury of Mr. Harrington by the defendant who operated the drilling rig.

¶ 36 We further hold that Mr. Harrington's exclusive remedy for the injury in question was under the Workers' Compensation Act and that all of the defendants have immunity from any other liability, including a claim for loss of consortium by Mr. Harrington's wife. *Rios v. Nicor Drilling,* 1983 OK 74, 665 P.2d 1183.

¶ 37 AFFIRMED.

GOODMAN, C.J., and STUBBLEFIELD, J., concur.