**Affirmed and Majority and Dissenting Opinions filed May 30, 2024.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-22-00803-CV

---

**ASHLEY NICOLE SCHNEIDER, INDIVIDUALLY, AND AS REPRESENTATIVE OF THE ESTATE OF JUSTIN JAMES SCHNEIDER, DECEASED, AND AS NEXT FRIEND OF REBECCA LYNN MIGNON SCHNEIDER, EMILY NICOLE DEAN SCHNEIDER, AND CLARA JEAN ROSE SCHNEIDER, ALL MINOR CHILDREN, Appellant**

**V.**

**QUINTANA ENERGY SERVICES, LLC F/K/A QUINTANA ENERGY SERVICES, LP; QUINTANA ENERGY SERVICES INC.; AND QES PRESSURE CONTROL, LLC, Appellees**

---

**On Appeal from the 165th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2019-58887**

---

## MAJORITY OPINION

In this appeal from a summary judgment in a workers' compensation death case, appellant Ashley Nicole Schneider, individually and in representative capacities, argues that the trial court erred in dismissing her claims because

appellees Quintana Energy Services, LLC f/k/a Quintana Energy Services, LP ("QES LLC"), Quintana Energy Services Inc. ("QES Inc."), and QES Pressure Control, LLC ("QESPC") failed to establish as a matter of law that Oklahoma's Administrative Workers' Compensation Act barred appellants' claims against them.

For the reasons explained below, we affirm the judgment.

## Background

In 2018, Justin Schneider died in Oklahoma after the commercial crane truck he was driving suffered a tire blow-out, veered out of control, and collided with another vehicle. Justin was driving the truck in the course of his employment with QESPC. It is undisputed that Justin's wife, Ashley, has received and continues to receive workers' compensation benefits as a result of Justin's death.

In 2019, Ashley filed suit against QES Inc., alleging negligence and gross negligence.[1] Although Ashley is a resident of Oklahoma (as was Justin, during his lifetime) and the accident occurred in Oklahoma, Ashley filed suit in Harris County, Texas, because QES Inc. was alleged to be headquartered in Harris County.

After QES Inc. answered and filed a verified plea that it was not a proper defendant because Justin was employed by QESPC, and that it was merely a parent company of QESPC, Ashley added QESPC and QES LLC as defendants.[2]

---

[1] Ashley filed suit in her individual capacity, in her capacity as the representative of Justin's estate, and as next friend of her and Justin's three minor children, Rebecca Lynn Mignon Schneider, Emily Nicole Dean Schneider, and Clara Jean Rose Schneider. We refer to all appellants collectively as "Ashley."

[2] According to Ashley's Third Amended Petition, QES LLC "owns 100% of, is a member of, and/or is management" of QESPC, and QES Inc. is the "Governing Person" of QES LLC.

2

The three appellees filed a joint traditional motion for summary judgment, arguing that Oklahoma law applies to Ashley's claims and that Oklahoma's Administrative Workers' Compensation Act (the "Act") contains an exclusive remedy provision that bars Ashley's negligence and gross negligence claims. Appellees noted that, unlike Texas, Oklahoma's workers' compensation scheme does not recognize an exception to the exclusivity bar for gross negligence.[3] Appellees argued that the only potentially applicable exception to Oklahoma's exclusivity bar was for a claim of "intentional tort." *See* Okla. Stat. tit. 85A, § 5(B)(2). Although Ashley's then-live pleading did not assert a claim against any appellee for an intentional tort, appellees argued in their motion that the summary-judgment evidence precluded any recovery for an intentional tort under Oklahoma law.

Ashley later amended her petition to delete her claim for gross negligence and add a claim for "intentional torts," citing the relevant Oklahoma statute. Ashley did not materially change her underlying factual allegations against appellees. Ashley filed a response to the summary-judgment motion, arguing that Oklahoma substantive law applied and that genuine and material fact issues precluded summary judgment on her intentional tort claim against appellees.

The trial court granted appellees' motion and rendered judgment that Ashley's "claims against [appellees] are dismissed with prejudice." Ashley timely appealed.

---

[3] *See* Tex. Lab. Code § 408.001(b) ("This section does not prohibit the recovery of exemplary damages by the surviving spouse or heirs of the body of a deceased employee whose death was caused by an intentional act or omission of the employer or by the employer's gross negligence.").

**Analysis**

Ashley contends that the summary judgment is error because appellees failed to conclusively prove the exclusive remedy defense under the Act. Ashley argues that she presented evidence from which a reasonable jury could find that appellees committed an intentional tort under Oklahoma law.[4]

**A.    Choice of law**

Texas applies the "most significant relationship" test described in the Restatement of Conflict of Laws to determine the particular substantive law that governs a case. *See* Restatement (Second) of Conflict of Laws §§ 6, 145 (Am. L. Inst. 1971); *see also* Tex. Civ. Prac. & Rem. Code §71.031(c) (in action for damages for death or personal injury occurring out of state, "[t]he court shall apply the rules of substantive law that are appropriate under the facts of the case"). In a specific area of law, such as that presented in today's case, matters to be considered in determining applicable law include: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the residence or place of incorporation and place of business of the parties; and (4) the place where the relationship between the parties is centered. *See* Restatement (Second) of Conflict of Laws § 145(2). This determination involves a question of law. *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 204 (Tex. 2000).

As all parties acknowledged in the trial court, Oklahoma is the state with the "most significant relationship" to the injury and the lawsuit. Ashley is a resident of Oklahoma; the accident occurred in Oklahoma; and Oklahoma is the place where the conduct allegedly causing the injury occurred. Therefore, we apply Oklahoma law to the substantive question of liability and Texas law to procedural questions.

---

[4] Ashley does not challenge the dismissal of her negligence claims against appellees.

*See Arkoma Basin Expl. Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 387-90 (Tex. 2008) (applying Texas law to procedural matters including preservation of error and objections to and sufficiency of expert testimony and Virginia law related to fraud claim).

**B.      Oklahoma's Administrative Workers' Compensation Act**

The Act requires that every employer and every employee:[5]

> shall be subject and bound to the provisions of the Administrative Workers' Compensation Act and every employer shall pay or provide benefits according to the provisions of this act for the accidental injury or death of an employee arising out of and in the course of his or her employment, without regard to fault for such injury, if the employee's contract of employment was made or if the injury occurred within this state.

Okla. Stat. tit. 85A, § 85A-3(A).  Under the Act's exclusive remedy provision, the rights and remedies granted to an employee subject to the provisions of the Act are "exclusive of all other rights and remedies of the employee, his legal representative, dependents, next of kin, or anyone else claiming rights to recovery on behalf of the employee against the employer, or any principal, officer, director, employee, stockholder, partner, or prime contractor of the employer on account of injury, illness, or death." *Id.* § 5(A).

The exclusive remedy provision will not apply, however, if "the injury was caused by an intentional tort committed by the employer." *Id.* § 5(B)(2).  Section 5(B)(2) further explains,

> An intentional tort shall exist only when the employee is injured as a result of willful, deliberate, specific intent of the employer to cause

---

[5] Substantive rights in workers' compensation law become fixed on the date of injury. *Wells v. Okla. Roofing & Sheet Metal, L.L.C.*, 457 P.3d 1020, 1030 (Okla. 2019).  The Act governs Ashley's claims against Justin's employer.  Okla. Stat. tit. 85A, § 85A-3(C) (applies to injuries and deaths occurring on or after February 1, 2014).

5

such injury. Allegations or proof that the employer had knowledge that the injury was substantially certain to result from the employer's conduct shall not constitute an intentional tort. The employee shall plead facts that show it is at least as likely as it is not that the employer acted with the purpose of injuring the employee. The issue of whether an act is an intentional tort shall be a question of law.

*Id.*

The intentional tort exception is key to today's case. The Supreme Court of Oklahoma interpreted this exception in *Wells v. Oklahoma Roofing & Sheet Metal, L.L.C.*, 457 P.3d 1020 (Okla. 2019). There, the court held that "the willful, deliberate, specific intent of the employer to cause injury" will constitute an intentional tort. *Id.* at 1029. Additionally, and notwithstanding seemingly contrary language in section 5(B)(2), the court held that an employer's intentional acts taken with the knowledge that injury is "substantially certain to occur" are also intentional torts. *Id.* As the court explained, "[a]n employer's 'specific intent' to injure, or knowledge that an injury is 'substantially [certain] to result,' equate to an intentional tort. Both require a knowledge of foreseeable consequences and are interpreted to mean intentionally knowing culpable acts." *Id.* at 1027. Importantly, to establish an intentional tort based on an employer's knowledge that injury is "substantially certain" to result from its conduct, "the employer not only had to intend the act that caused the injury," but also must have known "that the injury was substantially certain to follow." *Id.* at 1025 (citing *Parret v. UNICCO Serv. Co.*, 127 P.3d 572, 579 (Okla. 2005)). In all events, the key is the actor's "subjective intent to cause harm" and the claimant "must prove that the willful, deliberate, culpable act was intentional." *Id.* at 1027. Thus, "the employer must have determined to injure an employee and used some means appropriate to that end; and that there must be a deliberate intent." *Id.* at 1028. This showing may be made with circumstantial evidence. *Id.* at 1027.

6

**C. Did the trial court reversibly err in granting summary judgment to appellees?**

1. Standard of review

Our review of a summary judgment is de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Because the trial court's summary judgment does not specify the ground or grounds on which it was granted, we uphold the court's judgment if properly supported by any ground asserted in the motion. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Dorsett*, 164 S.W.3d at 661.

A summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508-09 (Tex. 2010). Once the movant produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

2. QESPC

We first consider whether QESPC, Justin's employer, established its right to summary judgment. As a movant for traditional summary judgment, QESPC had the initial burden of proving entitlement to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *see City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000).

7

In her live pleading, Ashley asserted that, at the time of the accident, Justin was driving a crane truck when the front, driver's side tire (or "steer tire") failed due to poor maintenance, which caused Justin to lose control of the truck. Ashley alleged that one or more of the appellees: knew of the unreasonably dangerous and hazardous condition of the subject tire prior to the accident because the tire suffered from a lack of maintenance; knew that the front steer tires needed to be replaced due to their hazardous conditions; chose not to replace them and did not inform Justin about the hazardous condition of the tires; and knew that improperly maintained steer tires lead to collisions.

a. *QESPC's evidence*

In the motion for summary judgment, QESPC established that Justin was its employee whose death occurred in Oklahoma during the course of his employment; that QESPC had secured workers' compensation insurance coverage; and that Ashley filed a workers' compensation claim and received death benefits under the insurance policy. Therefore, QESPC demonstrated that the Act applies. Okla. Stat. tit. 85A, § 3(A).

Citing the Act's exclusive remedy provision, QESPC also argued that Ashley's district court claims were barred. *Id.* § 5(A). QESPC noted the exception to the exclusive remedy provision when the injury is caused by an employer's intentional tort. *Id.* § 5(B)(2). QESPC urged that it did not commit an intentional tort under Oklahoma law because it had no knowledge or reason to believe that any injury to Justin was substantially certain to occur, much less foreseeable. QESPC relied on the following evidence: (1) QESPC operated and maintained crane trucks as part of its operations, including the one at issue in the underlying suit: (2) the tires on the crane truck passed inspection in 2017 and several times in 2018, including a third-party inspection on the day of the accident; and (3) Justin

8

performed a pre-trip inspection on the crane truck on the day of the accident and reported there were no operational deficiencies on or in the crane truck, after specifically inspecting the tires.[6]

QESPC also attached an affidavit from a retained tire expert expressing his opinion that the remains of the crane truck and its tires reflected proper tire maintenance. He further opined that his inspection of the detached tire shreds did not reflect any apparent conditions that would have suggested tire failure was imminent.

The evidence attached to the motion for summary judgment conclusively established that QESPC had no knowledge of an unreasonably dangerous tire condition, let alone a substantial certainty that the tire would fail and cause injury or death. Therefore, we conclude that QESPC met its initial summary-judgment burden by conclusively demonstrating that it did not commit an intentional tort and thus the exclusive remedy exception did not apply.

We note that Ashley amended her petition after appellees filed their summary-judgment motion. The amended pleading—the Third Amended Petition—deleted the claim for gross negligence and added a claim for intentional tort. When a trial court grants a summary judgment on a claim not addressed in the summary-judgment motion, it generally commits reversible error. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001). When the summary-judgment movant fails to amend its motion after the nonmovant amends her petition, however, the summary judgment can still be affirmed if the original motion is broad enough to encompass the newly asserted claim. *Bridgestone Lakes Cmty.*

---

[6] The crane truck had been at a third-party repair yard for some months before the day of the accident. The third-party servicing company performed an inspection of the crane truck before Justin arrived to pick it up. Justin also performed a pre-trip inspection of the crane truck before driving. Neither inspection revealed any concerns with the condition of the tires.

*Improvement Ass'n, Inc. v. Bridgestone Lakes Dev. Co.*, 489 S.W.3d 118, 123 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *see Coterill-Jenkins v. Tex. Med. Ass'n Health Care Liability Claim Tr.*, 383 S.W.3d 581, 592 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). Appellees' motion for summary judgment specifically addressed the intentional tort exception to the Act's exclusive remedy provision and thus was broad enough to encompass the newly asserted claim in Ashley's Third Amended Petition.

b. *Ashley's evidence*

The summary-judgment burden shifted to Ashley to produce evidence raising a genuine issue of material fact that QESPC knew that the tire on the crane truck was substantially certain to fail and injure Justin. *See Wells*, 457 P.3d at 1027-28.

Ashley first directs us to the deposition of former QESPC employee, Dustin Easter. After the accident, Justin's supervisor, Charles Berryman, told Easter that Justin had called Berryman before he started the trip and "made a comment about a tire being bad and [Justin] was told it will make it -- you know, it's okay to drive it." According to Easter, Justin told Berryman that "the tires are not too good on this crane," but "was told they'll make it back to Elk City." Another witness, Brody Rice, said, "I just remember people . . . in the shop talking that Justin called and said he didn't want to drive that crane."[7]

---

[7] QESPC objected to this evidence on hearsay grounds. The record, however, does not reflect a ruling on QESPC's objection or an exception by QESPC to the court's refusal to rule. *See* Tex. R. App. P. 33.1(a). Because an inadmissible-hearsay complaint raises a defect in form rather than a defect in substance, a party must present this complaint to the trial court and obtain an explicit or implicit ruling. *Okpere v. Nat'l Oilwell Varco, L.P.*, 524 S.W.3d 818, 824 (Tex. App.—Houston [14th Dist.] 2017, pet. denied).

Ashley also highlights evidence of poor tire maintenance by QESPC. According to QESPC division supervisor Shawn McNinch, the shelf life of the steer tires on a crane truck is only two years, and out-of-date tires should be changed upon discovery due to an "excessive risk of failure," because "a tire can look good as far as tread but still be too old to be functional." According to McNinch, within the oilfield service industry, checking the "born-on" date—a mark indicating what year a tire was manufactured—is a critical part of maintaining tires. As McNinch explained, oilfield service providers recognized that treating tires as "new" without knowing their born-on dates presents an important safety issue; after "too many tires [were] getting blown, too many wrecks were happening," so "born on dates became a very important deal" for "all the oilfield service company industry related [providers,] even crane companies." QESPC's Heather King added that QESPC had "identified a few tires that might have been at a facility for a good year but never installed and so even though we were technically getting a brand new set of tires they might be a year old."

An investigation by QESPC after the accident revealed that the tire that failed was purchased in 2015, though its manufacture date was unknown.[8] Thus, the tire was at least three and one-half years old at the time of Justin's accident. QESPC did not keep and maintain records of manufacture dates.

According to Ashley, at the time of Justin's accident, QESPC did not have a true "preventative maintenance" program. Instead, for budgetary reasons, QESPC had a practice of "let's wait and only spend the money when something breaks." She argues that QESPC had no procedures in place before Justin's death to track the life of tires and regularly replace those found to be out of date—though the

---

[8] It was undisputed that the tire was sufficiently damaged in the accident that its manufacture date was no longer legible.

procedures adopted in the wake of his death show this would have been feasible. Ashley emphasizes that QESPC implemented a preventative-maintenance program after Justin's death that tracked the manufacture dates of tires and required steer tires to be replaced two years after installation.

There is evidence that QESPC was aware that an accident or injury could occur if a steer tire failed. Rodney Vaught, a QESPC manager, testified that failure of a steer tire on a crane truck driving at highway speed makes a crane truck "very hard to control":

> Q . . . . [T]he maintenance of those steer tires is of paramount concern because of the likelihood of serious injury or death should they fail while being operated at highway speeds, true?
>
> . . .
>
> A. Yeah. They can -- if they fail you can have a bad -- bad accident if it fails.

Two months before Justin's accident, QESPC's Department of Transportation Coordinator, Ashley Hargrove, found a "real bad" tire on one of the company's trucks and told staff at an Elk City safety meeting that the mechanics needed to inspect the tires and probably replace some.

Ashley's retained engineering expert, T.J. Tennent—a former Bridgestone/Firestone engineer—examined the remains of the subject steer tire and determined that it failed due to improper maintenance, which he said "is usually related to improper air pressure." Tennent opined that "tire failures were a foreseeable consequence of failing to properly maintain and monitor the steer tires," and that "by failing to properly maintain and monitor the steer tire and other tires on the crane truck, QES knew that tire failures were substantially certain to result." Tennent did not offer any testimony about the probability of a tire failure

12

given the age of the tire. Additionally, Tennent did not mention any condition of the tire other than improper air pressure.

### c. *Ashley did not defeat QESPC's right to summary judgment*

As the Supreme Court of Oklahoma clarified in *Wells*, Oklahoma's understanding of "intentional" torts includes an actor's deliberate, specific intent to cause injury as well as an intentional act taken with the knowledge that injury is substantially certain to result. *Wells*, 457 P.3d at 1025-27. As the court put it, the "specific intent" and "substantial certainty" nomenclatures do not describe different degrees of conduct but are the same thing. *Id.* at 1026,[9] 1027.[10] To establish that an employer acted intentionally, the claimant must show either that the employer desired to bring about the injury, or that the employer intended the act that caused the injury and knew that the injury was certain or substantially certain to result. *See id.* at 1025 (citing *Parret*, 127 P.3d at 579). This requires showing an employer's "subjective appreciation" of the resulting injury. *Id.* at 1026. This is a "high standard and will rarely be met,"[11] but a claimant may satisfy this burden with circumstantial evidence. *See Wells*, 457 P.3d at 1027-28.

Ashley does not contend that QESPC desired to cause Justin's injury. Therefore, Ashley's evidence had to show that (1) QESPC intended for Justin to

---

[9] "According to Employer, § 12 attempts to redefine the existence of intentional torts to only those that result from the 'willful, deliberate, specific intent of the employer' to cause injury and excepts those injuries an employer knows are substantially certain to occur. Yet, that fallacy is premised on the specific intent and substantial certainty nomenclatures, commonly misunderstood as one being different than the other. **They are not.** '[W]hat appears at first glance as two distinct bases for liability is revealed on closer examination to be one and the same.'" (Bold in original).

[10] "The belief that one has a different level or degree of a tortious act, and thereby concluding that specific intent and substantial certainty are different animals, is a fallacy."

[11] *Parret v. UNICCO Serv. Co.*, No. CIV-01-1432-HE, 2006 WL 752877, at *4 (W.D. Okla. Mar. 21, 2006).

13

drive the crane truck with the subject steer tire, and (2) QESPC knew that a blow-out of the steer tire on Justin's crane truck was certain or substantially certain to follow. We believe Ashley's evidence suffices as to the first aspect of the required showing. Based on the phone call Justin made to his supervisor on the day of the accident, and the response he received—that it was okay to drive and that he could make it to Elk City—a jury could reasonable infer that QESPC intended for Justin to drive on the tire.

The second aspect of the required showing is more problematic. Viewing the summary-judgment evidence and reasonable inferences in the light most favorable to Ashley, however, we conclude that the evidence is not sufficient to create a genuine issue of material fact that QESPC knew that the steer tire on Justin's crane truck was certain or substantially certain to fail.

We reach this conclusion guided by *Wells* and other relevant Oklahoma law. In *Price v. Howard*, for example, a plaintiff sued after her husband died in a plane crash on the employer's corporate plane. 236 P.3d 82, 85 (Okla. 2010). The court held that the plaintiff had not met the "substantial certainty" standard on summary judgment despite showing that the defendant knew the plane was too heavy, the weather was poor, the aircraft had a new propeller system, and the defendant violated restrictions on its operating limitations. *Id.* There was no evidence that the defendant was ever advised of facts indicating that the flight would not be safe. *Id.* at 90. Even willful violations of government safety regulations, the court stated, do not rise to the level of an intentional tort. *Id.* (footnote omitted). The court reasoned that although the defendant was aware the circumstances substantially increased the likelihood of complications and that the defendant may very well have acted recklessly, *id.* at 89-90, the plaintiff had not shown that the employer "acted with the knowledge that [the crash] was substantially certain to

14

result from the employer's conduct." *Id.* at 90. The court observed that the "substantial certainty" standard imposes a "formidable barrier" against recovery. *Id.*

In *Harrington v. Certified Systems, Inc.*, 45 P.3d 430 (Okla. Civ. App. 2000), a worker was injured when the floor of a drilling rig slid out of place and struck him in the head. *Id.* at 431. The plaintiff opposed a motion for summary judgment with evidence that the defendant's supervisors who operated the rig (1) knew that the rig floor did not fit properly; (2) were aware the floor could slide out unless secured; (3) made a conscious decision not to secure the floor by means that were readily available; and, importantly, (4) directed Harrington to work near the rig without the protection of a hard hat, after denying his request to retrieve his hard hat from a nearby storage room. *Id.* While recognizing that the evidence raised fact questions on negligence and possibly gross negligence, *id.* at 436, the court held that the defendant's conduct did not rise to the level of an intentional act that was substantially certain to result in the injury. *Id.*

The Tenth Circuit applied Oklahoma's "substantial certainty" test in *Monge v. RG Petro-Machinery (Group) Co. Ltd.*, 701 F.3d 598 (10th Cir. 2012). That case involved a piece of safety equipment on an oil rig called a "crown saver" that the employer "was aware . . . was not operational." *Id.* at 603, 608. Concluding that the employee "may have had a meritorious claim to recover for his tragic injuries outside of workers' compensation if he were required to show that [the employer] had knowledge of foreseeable risk, high probability, or even substantial likelihood of injury," the court held that "nothing short of [the employer's] knowledge of the substantial certainty of injury will do under" Oklahoma law. *Id.* at 608 (quotation and alteration omitted).

15

Ashley cites Oklahoma decisions in which courts found fact questions existed whether the employer knew injury was substantially certain to result from the employer's conduct. In *Parret*, the United States District Court for the Western District of Oklahoma denied the employer's summary-judgment motion after determining that a fact question existed on the intentional tort exception. *Parret*, 2006 WL 752877, at *4.[12] The decedent in *Parret* was electrocuted while working on emergency light fixtures at a plant. *Id.* at *1. The plaintiff's evidence showed that the employer knew there were no current electrical prints or lockout/tagout procedures for the emergency lighting system in the area where the decedent was working and that it was aware that employees did not know how to disconnect the power to the lights without serious adverse consequences. *Id.* at *4. A few months before the decedent was killed, another employee received an electrical shock while working on a similar lighting system. *Id.* Supervisors, moreover, not only were aware that employees worked on the emergency lighting system while it remained energized but directed them to do so. *Id.* There was evidence that several employees refused to work on the emergency lights because they could not be de-energized, but that supervisors would then direct the same work order to other employees. *Id.* Apparently, this is what occurred as to the work assignment given to the decedent. Faced with this evidence, the court denied the employer's summary-judgment motion and held that some evidence existed to raise a fact question whether the employer intentionally engaged in specific acts when it knew that injury was substantially certain to follow. *See id.*

Ashley also cites *Torres v. Cintas Corp.*, 672 F. Supp. 2d 1197 (N.D. Okla. 2009), where the court denied summary judgment to the defendant when an employee was killed after he climbed onto an energized conveyer belt to clear a

---

[12] The district judge issued this decision after it received the Oklahoma Supreme Court's answers to certified questions in *Parret*, 127 P.3d 572. *See Parret*, 2006 WL 752877, at *3.

dryer jam and subsequently fell into the dryer. *Id.* at 1203, 1217. The court noted conflicting evidence about whether the company knew employees were climbing onto energized conveyer belts. *Id.* at 1211. The court also noted the undisputed fact that the employer was aware of prior similar accidents involving employees climbing onto energized conveyer belts at other plants. *Id.* The court concluded that a fact question existed whether the employer knew with substantial certainty that the employee could be injured by climbing on an energized conveyer belt and failed to stop this practice. *Id.*

Another case on which Ashley relies is *Tiger v. Verdigris Valley Electric Cooperative*, 410 P.3d 1007 (Okla. 2016). There, an employee died while working on energized electrical equipment. The evidence showed that a metal barricade surrounded an energized junction box, and the employee had to enter the barricade with less than nineteen inches from the barricade and the door of the junction box. *Id.* at 1012. The employee was made to perform the work even though he had no experience or training in high-voltage installations. *Id.* The employer did not cut the power, did not provide the employee with a safety insulation blanket, did not use available measures to ensure that electricity did not reach the work area, and did not remove the illegal metal barricade. The court held that a jury could find that the employer knew with substantial certainty that at least one member of its work crew would be injured or killed as a result of its intentional conduct or omissions. *Id.*[13]

---

[13] Ashley cites three other cases: *Jordan v. Western Farmers Electric Cooperative*, 290 P.3d 9 (Okla. 2012); *Craft v. Graebel-Oklahoma Movers, Inc.*, 178 P.3d 170 (Okla. 2007); and *Kniss v. American Airlines, Inc.*, No. 18-CV-212-JED-JFJ, 2021 WL 4166341 (N.D. Okla. Jan. 26, 2021). *Jordan* and *Kniss* do not provide helpful guidance because they involved whether the claimants had satisfied applicable pleading standards, not whether an employer was entitled to summary judgment. Similarly, *Craft* is not on point because the plaintiff in that case did not argue the intentional tort theory in response to the defendant's summary-judgment motion, even

We conclude the present circumstances are closer to those discussed in *Price*, *Harrington*, and *Monge*, rather than Ashley's most compelling authority—*Parret*, *Torres*, and *Tiger*. Ashley's cases involved evidence that the employers knew that employees were working on wires or equipment energized with electricity; that employees were told not to shut off power; and that the employers had knowledge of prior injuries from that same conduct.

Here, Ashley's strongest evidence is Easter's testimony that Justin called his supervisor on the day of the accident to say that the tires on the crane truck were "bad" or "not too good," but he was told that "it's okay" and "they'll make it back to Elk City." No other evidence or testimony reveals what Justin may have meant when he said the tires are "bad." The record contains no other details concerning the information communicated to Berryman about the tire's condition such that a fact finder could reasonably discern Berryman's state of mind and find that he believed, based on what Justin told him, that the steer tire on the crane truck was substantially certain to fail if Justin drove the truck. In contrast to the authority cited by Ashley, the record contains no evidence of relevant prior accidents.[14] Additionally, though Hargrove found a "real bad" tire on one of the company's trucks two months before Justin's accident and told staff at an Elk City safety meeting that the mechanics need to inspect the tires and probably replace some, this evidence reveals QESPC's *concern* for employees' safety, not an intent to injure.[15]

---

though she presented evidence that sufficiently raised the question. The supreme court remanded the case to the trial court.

[14] Ashley alleges that the crane truck in question suffered a tire failure in 2017. We have not been directed to any summary-judgment evidence supporting this assertion.

[15] There is no evidence that the "bad" tire Hargrove saw was on the crane truck Justin was driving because that crane truck was at a third-party repair yard two months before the accident.

Ashley's other evidence showed that QESPC knew that some tires were old and that driving on them exposed its employees to a risk of significant injury. At least one witness testified that QESPC resisted replacing old tires for cost reasons. Ashley did not produce evidence that QESPC knew that allowing its employee to drive a crane truck with a steer tire at least three years old was substantially certain to result in injury or death to the employee.

Ashley's expert, Tennent, stated that the steer tire failed due to excessive heat resulting from insufficient tire pressure. He added that improper maintenance is usually related to improper tire pressure. He did not say that the tire's age contributed in any way to the failure or that the tire should have been replaced because of its age. His only mention of whether this tire was substantially certain to fail was the following:

> Based on the evidence I have reviewed, and my knowledge, training, and experience, by failing to properly maintain and monitor the steer and other tires on the crane truck, QES knew that tire failures were substantially certain to result. QES also knew that tire failures were a foreseeable consequence of failing to properly maintain and monitor the steer tires on its crane truck. Such knowledge may be inferred from QES's conduct and all surrounding circumstances.

Tennent's opinion that "QES knew that tire failures were substantially certain to result" is conclusory and not probative because it is not tied to the factual evidence discussed in his report—underinflated tires. *See Schindler Elevator Corp. v. Ceasar*, 670 S.W.3d 577, 585 (Tex. 2023) (expert must link conclusions to the facts and explain the basis of opinion).[16] Moreover, there is no evidence that

---

[16] "An expert's testimony is conclusory when the expert asserts a conclusion with no basis, when the basis offered provides no support for the opinion, or when the expert offers only his word that the bases offered to support his opinion actually exist or support his opinion. An expert must link his conclusions to the facts and explain the basis of his assertions. Asking the jury to take the expert's word for it because of his status as an expert will not suffice." *Id.*

QESPC was aware that the steer tire was improperly inflated. No witness discussed the steer tire's air pressure or claimed that the tire was underinflated. Tennent's opinion that "QES also knew that tire failures were a foreseeable consequence of failing to properly maintain and monitor the steer tires" goes to negligence, but it is insufficient to raise a fact question as to Oklahoma's intentional tort exception.

While Ashley's evidence may create a genuine and material fact question whether QESPC was negligent, or possibly grossly negligent—matters not before us—it is not sufficient to justify a reasonable inference that QESPC desired to injure Justin because it knew that a tire blow-out was a substantial certainty. QESPC's intentional acts may have set the stage for an accidental injury later, but there is no evidence that QESPC had a subjective appreciation that the steer tire was substantially certain to blow-out on this trip.

We overrule Ashley's issue with respect to the claims against QESPC.

3.      QES Inc. and QES LLC

Ashley asserts that the trial court erred in granting summary judgment for, and dismissing her claims against, QES Inc. and QES LLC. Ashley argues that the summary-judgment motion did not seek relief on behalf of those appellees and the record does not establish that they may claim immunity under section 5 of the Act. Therefore, Ashley seeks reversal as to those appellees because the trial court impermissibly granted more relief than requested.

In response, QES Inc. and QES LLC contend on appeal that they are entitled to the same protection as QESPC under the Act's exclusivity provision because they are alleged to be "stockholders" of QESPC, Justin's employer. The exclusivity provision states that an employee's rights and remedies under the Act

20

are exclusive as to recovery against not only the employer but also "any principal, officer, director, employee, *stockholder*, partner, or prime contractor of the employer." *See* Okla. Stat. tit. 85A, § 5(A) (emphasis added). Moreover, QES Inc. and QES LLC urge that Ashley sued them based only on their alleged acts in their role as Justin's employer.

Although the summary-judgment motion states that it is on behalf of all three appellees and requests dismissal of all of Ashley's claims based on Oklahoma's exclusive remedy provision, QES Inc. and QES LLC are referenced only in the introductory section. The substantive argument and the prayer mention only QESPC. QES Inc. and QES LLC presented no legal argument or evidence establishing that they were entitled to summary judgment under the Act's exclusive remedy provision based on their alleged status as "stockholders."

By dismissing Ashley's claims against QES Inc. and QES LLC, the trial court therefore granted more relief than specifically requested. It is generally error for a trial court to grant more relief than a summary-judgment movant requests in a motion. *See G & H Towing Co. v. Magee*, 347 S.W.3d 293, 298 (Tex. 2011) (per curiam). Generally, we may not affirm a summary judgment on grounds not presented in the motion. *Rush v. Barrios*, 56 S.W.3d 88, 97 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). The summary judgment is therefore erroneous as to QES Inc. and QES LLC. *See* Tex. R. Civ. P. 166a(c); *Bridgestone Lakes Cmty. Improvement Ass'n*, 489 S.W.3d at 123.

As the appellant, it is Ashley's burden to demonstrate that this error is reversible. *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 667 (Tex. 2009) (complaining party bears burden of showing harmful error on appeal to obtain reversal); *Grimm v. Grimm*, 864 S.W.2d 160, 163 (Tex. App.—Houston [14th

Dist.] 1993, no writ) ("The burden of showing reversible error is on appellant as the complaining party."); *see* Tex. R. App. P. 44.1(a).

When a trial court grants a summary judgment on a claim not addressed in the summary-judgment motion, the trial court's error is generally reversible. *See Lehmann*, 39 S.W.3d at 200. The error is harmless and not reversible, however, "when the omitted cause of action is precluded as a matter of law by other grounds raised in the case." *Magee*, 347 S.W.3d at 297-98 (citing Tex. R. App. P. 44.1(a)). This is a limited exception and applies, for example, if the defendant has conclusively disproved an ultimate fact or element which is common to all causes of action alleged. *Id.* at 297; *see Sweet Water Well Servs., LLC v. W. Houston Airport Corp.*, No. 14-18-00596-CV, 2020 WL 5048356, at \*3 (Tex. App.— Houston [14th Dist.] Aug. 27, 2020, no pet.) (mem. op.). In that circumstance, the summary judgment may be affirmed. *Magee*, 347 S.W.3d at 297.

We conclude this exception applies here. Ashley's intentional tort allegations and argument against QES Inc. and QES LLC are the same as those she asserts against QESPC, namely that QES Inc. and QES LLC committed an intentional tort for the same reasons and in the same way that QESPC committed an intentional tort. Ashley's Third Amended Petition, summary-judgment response, and appellate brief treat all three appellees as one and make no allegations that distinguish the conduct of one appellee from another. Based on her invocation of Oklahoma's workers' compensation intentional torts exception against all three appellees, she bases her claim to recovery from all appellees on the employment relationship. As explained above, QESPC established its entitlement to judgment as a matter of law on all Ashley's claims under the Act's exclusive remedy provision. The evidence conclusively demonstrates that QESPC did not commit an intentional tort that resulted in Justin's death, and Ashley's

22

evidence does not raise a genuine issue of material fact showing otherwise. This showing by QESPC "conclusively disproved an ultimate fact or element which is common to all causes of action alleged" against all appellees. *See id.* Ashley has not alleged or presented evidence to raise a genuine issue of material fact that any appellee committed an intentional tort under Oklahoma law. Thus, the Act's exclusive remedy provision bars Ashley's claims against QES Inc. and QES LLC. The trial court's grant of summary judgment to these appellees despite their failure to move for summary judgment on the exclusive remedy ground, though error, is not reversible error.

The Oklahoma Supreme Court has held that the Act does not prohibit an employee from maintaining a common-law action against a negligent third person outside the employer-employee relationship. *Weber v. Armco, Inc.*, 663 P.2d 1221 (Okla. 1983). More recently, in *Odom v. Penske Truck Leasing Co.*, the court reiterated that an employer could act in a "dual capacity" that might give rise to liability in some circumstances. 415 P.3d 521, 527 (Okla. 2018). The court stated, "an employer who was generally immune from tort liability might become liable to their employee as a third-party tortfeasor; if they occupied, in addition to their capacity as an employer, a second capacity that conferred upon them obligations independent of those imposed upon them as an employer." *Id.* at 527. The Act's exclusive remedy provision, accordingly, does not bar an employee from bringing a cause of action in tort against a stockholder of his employer for independent tortious acts when the stockholder is not acting in the role of employer. *Id.* at 534.

Ashley's live pleading does not allege that QES Inc. and QES LLC owed or breached duties independent of the employment relationship. She has not alleged that they occupied dual capacities, which gave rise to duties independent of an employer. Though under *Odom*, an employer's stockholder may fall outside the

23

Act's exclusive remedy protections if the stockholder "possesses a persona" independent from that of an employer, *id.* at 532-33, Ashley has not alleged or argued that QES Inc. and QES LLC acted outside the role of employer.

We overrule Ashley's issue with respect to the claims against QES Inc. and QES LLC.

**D.      Response to the dissent**

Our dissenting colleague would dismiss this appeal for want of jurisdiction due to the absence of an appealable summary judgment.  We respectfully disagree and hold that the summary judgment dismissing with prejudice all the plaintiffs' claims against all the defendants is final and appealable.

Ashley's live petition named the three appellees as defendants:  QES, LLC; QES Inc.; and QESPC.  Ashley asserts two causes of action:  negligence; and intentional tort under section 5(B)(2) of the Act.  She asserts these two causes of action against all three appellees.  There are no other parties, and appellees did not assert a counterclaim.

Appellees filed a joint traditional motion for summary judgment based on the application of Oklahoma's workers' compensation exclusive remedy provision. The trial court granted the motion, stating that "Defendants' Motion for Summary Judgment against Plaintiffs is GRANTED" and that "Plaintiffs' claims against Defendants are dismissed with prejudice."

In *Lehmann*, the supreme court stated that "an order that expressly disposes of the entire case is not interlocutory merely because the record fails to show an adequate motion or other legal basis for the disposition."  39 S.W.3d at 206. "Language that the plaintiff take nothing by his claims in the case, or that the case is dismissed, shows finality if there are no other claims by other parties. . . ."  *Id.* at

24

The trial court's order in the present case satisfies this test. The trial court clearly dismissed with prejudice all of Ashley's claims against all appellees, and the record reveals no other claims by other parties. *Id.* Therefore, the judgment is final and appealable. *Ritzell v. Espeche*, 87 S.W.3d 536, 538 (Tex. 2002) (per curiam); *Deepwell Energy Servs., LLC v. Aveda Transp. & Energy Servs.*, No. 11-20-00067-CV, 2020 WL 1625522, at *2 (Tex. App.—Eastland Apr. 2, 2020, pet. denied) (mem. op.); *Slaughter v. Johnson*, No. 14-17-00050-CV, 2018 WL 4116115, at *3-5 (Tex. App.—Houston [14th Dist.] Aug. 28, 2018, no pet.) (mem. op.); *In re Harris Cnty. Hosp. Dist. Aux., Inc.*, 127 S.W.3d 155, 159 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding); *Lopez v. Yates*, No. 14-01-00649-CV, 2002 WL 31599472, at *2 (Tex. App.—Houston [14th Dist.] Nov. 21, 2002, no pet.) (mem. op.). Our reading of the trial court's order is consistent with *Lehmann* and its progeny (including this court's precedent), preserves the plaintiffs' right to appeal, and avoids the unnecessary cost and delay associated with a dismissal or remand followed by a subsequent appeal.[17]

---

[17] The parties waited almost an entire year for the trial court to rule on the defendants' motion.

## Conclusion

QESPC conclusively proved its entitlement to the exclusive remedy defense under Oklahoma's Administrative Workers' Compensation Act, and Ashley did not present evidence raising a genuine issue of material fact under the intentional tort exception. Thus, the trial court did not err in granting summary judgment to QESPC. Further, the summary judgment is not reversible error as to the claims against QES Inc. and QES LLC because those claims are precluded as a matter of law by other grounds raised and established in the summary judgment record. We therefore affirm the judgment.


/s/    Kevin Jewell
       Justice

Panel consists of Justices Jewell, Spain, and Wilson. (Spain, J., dissenting)